Affirmed by published opinion. Judge WILKINS wrote the majority opinion, in which Chief Judge KEELEY joined. Judge MICHAEL wrote an opinion concurring in part and dissenting in part.
OPINION
WILKINS, Circuit Judge:
Jackson Baynard brought this action pursuant to 42 U.S.C.A. § 1983 (West Supp.2000) and Title IX of the Education Amendments of 1972, see 20 U.S.C.A. §§ 1681-88 (West 2000), against Catherine Malone, Otto Beckhoff, Paul Masem, and the Alexandria City School Board (“the ACSB”). Malone appeals an order of the district court denying her motion for judgment as a matter of law. See Fed.R.Civ.P. 50. Baynard cross-appeals orders of the *233 district court granting judgment as a matter of law to Beckhoff, Masem, and the ACSB. We affirm all rulings of the district court.
I.
Prior to and during the 1990-91 school year, Craig J. Lawson was employed by the ACSB as a sixth-grade teacher at Charles Barrett Elementary School, where Malone was the principal.[1] In March 1990, a former student of Lawson’s, Steven Leekie, met with Malone and informed her that he had been sexually molested by Lawson when he (Leekie) was a sixth-grade student, some 15 years earlier. Leekie warned Malone that Lawson was a pedophile and advised her to watch out for certain behavior by Lawson, such as spending extra time with a student. Leck-ie stated, however, that he was not interested in pressing charges against Lawson. The following day, Leckie’s mother telephoned Malone and confirmed her son’s story. Malone took no action after receiving this information and did not relay the information to anyone. She did not report the alleged incident to Child Protective Services (CPS) because of Leckie’s unwillingness to become involved in a police investigation. Later that spring, an unidentified woman informed Malone during a school function that Lawson had sexually molested a student. Malone did not take the woman’s name or make any record of this conversation.
In the fall of 1990, Baynard transferred to Charles Barrett Elementary and was assigned to Lawson’s classroom. Lawson began to molest Baynard almost immediately, and the abuse continued until Bay-nard entered college. The abuse occurred on school grounds before, during, and after school hours; Lawson also abused Bay-nard during camping trips and at Lawson’s home.
In November 1990, the school librarian, Lillian Newman, visited Lawson’s classroom before school hours and observed Baynard sitting on Lawson’s lap (“the lap-sitting incident”). Lawson’s arm was around Baynard’s shoulders, and their faces were very close together. When Lawson saw Newman he jumped up, spilling Baynard to the floor. Newman thought the behavior was inappropriate and related the incident to Malone later that morning. Malone spoke with Lawson, who apparently convinced her that what Newman had observed was an innocent “father-son chat.” J.A. 166. Malone advised Lawson that she had observed excessive physical contact between Baynard and Lawson, which she characterized as being initiated by Baynard. Malone counseled Lawson to limit physical contact with students, and Lawson promised to admonish Baynard to behave more appropriately. Malone took no further action at that time.
Between Thanksgiving and Christmas, a teacher at Barrett, Rosemary Herman, reported to Malone that a neighbor had informed her that Lawson abused children. Malone responded that “she couldn’t tell [Herman] not to say anything about this, because it was out in the neighborhood.” Id. at 368. According to Malone’s testimony, it was not until this point that she perceived a danger to Lawson’s students. In January 1991, she contacted Beckhoff, the ACSB’s personnel director. Malone told Beckhoff about the accusation made by Leekie in March 1990 and Herman’s report and informed Beckhoff that Lawson was very physical with the students. However, Malone did not mention Baynard or tell Beckhoff about the lap-sitting incident.
*234 Beckhoff immediately began an investigation. He instructed Malone to keep records of any and all complaints from parents and to monitor Lawson’s activities. Malone complied with the latter request by walking the halls of the school several times a day, being sure to stop at Lawson’s classroom. She also tried to watch Lawson at recess and observed his interactions with students. Although Baynard often stayed after school with Lawson— sometimes for as long as one and one-half hours — and Lawson frequently gave Bay-nard a ride home, Malone testified that she never observed them together during the course of her monitoring efforts.
Beckhoffs part of the investigation involved interviewing Leckie and his parents and the husband of the neighbor who had spoken to Herman.[2] Beckhoff also examined Lawson’s personnel file and contacted Lawson’s former school district in New Hampshire. As a result of his investigation, Beckhoff came to believe that Leckie had been abused by Lawson. Beckhoff contacted CPS, which informed him that it could not investigate Leckie’s allegations because Leckie was an adult. Beckhoff then involved the Alexandria City Police Department. Leckie cooperated with the police investigation but refused to initiate a tape-recorded telephone conversation with Lawson. As a result, the investigation was closed for lack of evidence.
Soon after the police investigation was closed, Lawson resigned from Barrett. He nevertheless continued to abuse Bay-nard until Baynard was a freshman in college. Baynard finally reported the abuse, and Lawson was arrested and convicted.
In April 1999, Baynard brought this action alleging, as is relevant to this appeal, that the ACSB had violated Title IX and that Malone, Beckhoff, and Masem were liable under § 1983. The' district court granted judgment as a matter of law to Beckhoff and Masem at the close of the evidence. The jury returned verdicts against the ACSB for $700,000 and against Malone for $350,000. The district court thereafter granted judgment as a matter of law to the ACSB, reasoning that the ACSB could not be held vicariously liable because Malone lacked authority to institute corrective measures against Lawson. See Baynard v. Lawson, 112 F.Supp.2d 524, 531-34 (E.D.Va.2000). The court denied Malone’s motion for judgment as a matter of law, reasoning that a rational jury could, conclude from the evidence that Malone was deliberately indifferent to the risk of constitutional injury to Baynard. See id. at 529-30.
Malone now appeals, arguing that the district court erred in denying her motion for judgment as a matter of law. Baynard cross-appeals, maintaining that the district court erred in granting judgment as a matter of law to Beckhoff, Masem, and the ACSB.[3]
- II.
We first consider Malone’s appeal of the denial of her motion for judgment as a matter of law, which we review de novo, see Konkel v. Bob Evans Farms Inc., 165 F.3d 275, 279 (4th Cir.1999). We must view the evidence in the light most favorable to Baynard, the nonmovant, and draw all reasonable inferences in his favor *235 without weighing the evidence or assessing the witnesses’ credibility. See Sales v. Grant, 158 F.3d 768, 775 (4th Cir.1998). “The question is whether a jury, viewing the evidence in the light most favorable to [Baynard], could have properly reached the conclusion reached by this jury.” Benesh v. Amphenol Corp. (In re Wildewood Litigation), 52 F.3d 499, 502 (4th Cir.1995). We must reverse if a reasonable jury could only rule in favor of Malone; if reasonable minds could differ, we must affirm. See Sales, 158 F.3d at 775; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (explaining that judgment as a matter of law is proper if “there can be but one reasonable conclusion as to the verdict”).
There is no dispute concerning the legal standards that govern Baynard’s § 1983 claim against Malone. It is well settled that “supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.”[4] Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994). Such liability is not based on ordinary principles of respondeat superior, but rather is premised on “a recognition that supervisory indifference or tacit authorization of subordinates’ misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.” Slakan v. Porter, 737 F.2d 368, 372 (4th Cir.1984). In order to establish supervisory liability under § 1983, a plaintiff must demonstrate:
(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor’s response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[ ]; and (3) that there was an affirmative causal link between the supervisor’s inaction and the particular constitutional injury suffered by the plaintiff.
Shaw, 13 F.3d at 799 (internal quotation marks omitted).
Malone first argues that there is no evidence to support a conclusion that she had actual or constructive knowledge of a risk to Lawson’s students.[5] We disagree. By the end of 1990, Malone knew that Leckie claimed to have been abused by Lawson; that Newman had observed Baynard sitting on Lawson’s lap in a manner Newman believed to be inappropriate; that Lawson was very physical with his students, often putting his arm around them in the halls; and that Lawson frequently took male students on camping trips at which no other adults were present. Malone argues that all of these facts, except the report from Leckie, are subject to benign interpretation. While this is true, it is also beside the point. A reasonable jury could conclude from the evidence presented that the conduct of which Malone was aware provided her with at least constructive knowledge of an unreasonable risk of constitutional injury to Lawson’s students.
*236 Malone next maintains that her actions toward Lawson, although inadequate to prevent or stop the abuse of Baynard, did not evince deliberate indifference to the risk of constitutional injury to Lawson’s students. “Deliberate indifference is a very high standard — a showing of mere negligence will not meet it.” Grayson v. Peed, 195 F.3d 692, 695 (4th Cir.1999), cert. denied, 529 U.S. 1067, 120 S.Ct. 1673, 146 L.Ed.2d 482 (2000); see Farmer v. Brennan, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (explaining that “deliberate indifference describes a state of mind more blameworthy than negligence” but “is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result”). Actions that in hindsight are “unfortunate” or even “imprudent” will not suffice. Jones v. Wellham, 104 F.3d 620, 627 (4th Cir.1997). Indeed, a supervisory official who responds reasonably to a known risk is not deliberately indifferent even if the harm is not averted. See Farmer, 511 U.S. at 844, 114 S.Ct. 1970; Doe v. Dallas Ind. Sch. Dist., 153 F.3d 211, 219 (5th Cir.1998) (concluding that school official who investigated complaint of sexual abuse was not deliberately indifferent even though official erroneously concluded that complaint was baseless).
Based upon the evidence presented at trial, a rational jury could conclude that Malone was deliberately indifferent to the risk that Lawson was abusing his students, particularly Baynard. Even if Malone’s response to the initial report from Leckie in the Spring of 1990 was reasonable, a factfinder could reasonably infer that Malone’s failure to respond to mounting evidence of potential misconduct by Lawson exhibited deliberate indifference. In particular, Malone’s desultory efforts at “monitoring” Lawson support the verdict.[6] Accordingly, we affirm the denial of Malone’s motion for judgment as a matter of law.
III.
On cross-appeal, Baynard contends that the district court erred in granting judgment as a matter of law to Beckhoff, Ma-sem, and the ACSB. With respect to Beck-hoff and Masem, Baynard contends that the district court erred in concluding that no rational jury could find deliberate indifference. With respect to the ACSB, Bay-nard maintains that the district court erred in concluding that the ACSB could not be held vicariously liable under Title IX for the deliberate indifference of Malone. We affirm all three rulings.
A.
In light of the evidence detailed above, we have little difficulty in concluding that no rational jury could find that Beckhoff was deliberately indifferent to a risk that Lawson was molesting his students. Beckhoff instituted a thorough investigation immediately upon receiving the report from Malone, during which he interviewed Leckie and others who had raised allegations regarding Lawson’s past conduct. Beckhoff further instructed Malone, who was responsible for the day-today supervision of Lawson, to closely monitor Lawson and report any incidents or complaints. Importantly, Beckhoff never had any knowledge of the lap-sitting incident.[7]
*237 We likewise affirm the grant of judgment as a matter of law to Masem. As superintendent, it was not Masem’s responsibility to conduct the investigation himself. Moreover, since Beckhoffs investigation was adequate, Masem did not act improperly in failing to direct Beckhoff to take some other action.
B.
We next turn to Baynard’s claim that the district court erred in granting judgment as a matter of law to the ACSB. As is relevant here, Title IX provides that “[n]o person in the United States shall, on the basis of sex, ... be subjected to discrimination under any education program or activity receiving Federal financial assistance.” 20 U.S.C.A. § 1681(a). This prohibition encompasses sexual harassment of a student by a teacher and is enforceable through a judicially implied private right of action for damages against a school district. See Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60, 75-76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). We conclude that the district court correctly held that no rational jury could find in favor of Baynard on his Title IX claim.
1.
Title IX conditions “an offer of funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds.” Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). In Gebser, the Supreme Court explained that the contractual nature of Title IX requires that a funding recipient have notice that it may be liable for a monetary award, i.e., it must actually be aware of the discrimination and fail to remedy it. See id. at 287-88, 118 S.Ct. 1989. In other words, a school district may be held liable under Title IX “only for its own misconduct”; the implied damages remedy is available only when “the funding recipient engages in intentional conduct that violates the clear terms of the statute.” Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 640, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).
In accordance with these considerations, the Supreme Court has expressly rejected the use of “principles of respondeat superior or constructive notice” for imposing liability on a school district under Title IX. Gebser, 524 U.S. at 285, 118 S.Ct. 1989. Rather, the Court held in Gebser that “a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [district’s] behalf has actual knowledge of discrimination” and is deliberately indifferent to it. Id. at 290, 118 S.Ct. 1989. As the Fifth Circuit phrased the test in a preGebser ruling,
a school district can be liable for teacher-student sexual harassment under Title IX only if a school official who had actual knowledge of the abuse was invested by the school board with the duty to supervise the employee and the power to take action that would end such abuse and failed to do so.
Rosa H. v. San Elizario Indep. Sch. Dist., 106 F.3d 648, 660 (5th Cir.1997).
The partial dissent asserts that the standard we apply is too strict and that the notice requirement is satisfied by actual notice of a substantial risk of ongoing *238 sexual abuse. Gebser is quite clear, however, that Title IX liability may be imposed only upon a showing that school district officials possessed actual knowledge of the discriminatory conduct in question. See Gebser, 524 U.S. at 285, 118 S.Ct. 1989 (“[W]e conclude that it would frustrate the purposes of Title IX to permit a damages recovery against a school district for a teacher’s sexual harassment of a student based on principles of respondeat superior or constructive notice, ie., without actual notice to a school district official.” (internal quotation marks omitted)); id. at 289, 118 S.Ct. 1989 (rejecting standard that would allow imposition of liability when “the district had no actual knowledge of the teacher’s conduct”); id. at 290, 118 S.Ct. 1989 (holding that liability may be imposed only when an appropriate school district official possesses “actual knowledge of discrimination”);
To the extent there is any doubt about the nature of the actual notice requirement articulated in Gebser, it is removed by the subsequent opinion of the Court in Davis. In recounting the Gebser holding, the Davis court stated, “In Gebser, we concluded that a recipient of federal education funds may be liable in damages under Title IX where it is deliberately indifferent to known acts of sexual harassment by a teacher.” Davis, 526 U.S. at 641, 119 S.Ct. 1661 (emphasis added). The Court further explained that in Gebser,
we rejected the use of agency principles to impute liability to the district for the misconduct of its teachers. Likewise, we declined the invitation to impose liability under what amounted to a negligence standard — holding the district liable for its failure to react to teacher-student harassment of which it knew or should have known. Rather, we concluded that the district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge.
Davis, 526 U.S. at 642, 119 S.Ct. 1661 (citations omitted) (second emphasis added).
2.
We agree with the district court that no rational jury could find the Gebser standard satisfied here.[8] In the first place, no rational jury could conclude that Malone — the relevant official for purposes of the ACSB’s liability under Title IX— had actual notice that Lawson was abusing one of his students.[9] Although Malone certainly should have been aware of the potential for such abuse, and for this reason was properly held liable under § 1983, there is no evidence in the record to support a conclusion that Malone was in fact aware that a student was being abused.
Secondly, no rational jury could find that Malone was invested with the power to take corrective action on *239 behalf of the ACSB. We agree with the Fifth Circuit that whether a supervisory employee may be viewed as the proxy of the school district depends upon whether the district has delegated to that employee the traditional powers of an employer, e.g., the authority to hire and terminate employees. See Rosa H., 106 F.3d at 660. “This inquiry circumscribes those school employees in the chain of command whom the school board has appointed to monitor the conduct of other employees and, as distinguished from reporting to others, remedy the wrongdoing themselves.” Id.
We agree with the district court that the principal of a public school in Virginia cannot be considered the functional equivalent of the school district. There is no question that a principal in the Virginia school system possesses substantial authority over the school to which he or she is assigned. For example, a principal must “provide instructional leadership,” is responsible for the administration of the school, and must supervise its operations and management. Va.Code Ann. § 22.1-293(B) (Michie 2000). Additionally, the principal is responsible for supervising teachers and evaluating employee performance. See Va.Code Ann. § 22.1-293(C) (Michie 2000); Lentz v. Morris, 236 Va. 78, 372 S.E.2d 608, 610-11 (1988).
Critically absent from the scope of a principal’s authority, however, are the powers that would make a principal the proxy of the school district: the power to hire, fire, transfer, or suspend teachers. In Virginia, those powers are reserved exclusively to the school district; a principal may only make recommendations regarding such matters. See Va.Code Ann. § 22.1-295(A) (Michie 2000) (“The teachers in the public schools of a school division shall be employed and placed in appropriate schools by the school board upon recommendation of the division superintendent.” (emphasis added)); id. § 22.1-293(C) (“A principal may submit recommendations to the division superintendent for the appointment, assignment, promotion, transfer and dismissal of all personnel assigned to his supervision.” (emphasis added)). Simply put, Virginia has made an explicit policy decision that school principals do not exercise the powers of an employer on behalf of the school district. Because Malone had no independent authority to suspend, reassign, or terminate Lawson, no rational jury could have concluded that her knowledge of ongoing discrimination at Charles Barrett Elementary should be imputed to the ACSB.
IV.
For the reasons set forth above, we conclude that the district court correctly denied Malone’s motion for judgment as a matter of law and correctly granted the motions of Beckhoff, Masem, and the ACSB. Accordingly, we affirm.

AFFIRMED.

. Lawson is not a party to this appeal.

. Beckhoff informed Masem, the superintendent of the ACSB, that the investigation of Lawson was occurring and periodically up- • dated Masem on its progress. Masem took no active role in the investigation.

. Baynard also makes a conclusory argument that he was entitled to a larger award of attorneys' fees from Malone. We reject this claim without further discussion.

. There is no dispute that the molestation of Baynard by Lawson was a "constitutional injury.”

. Malone argues primarily that she was not deliberately indifferent to a risk of constitutional injury to Baynard. However, Shaw makes clear that the appropriate inquiry is whether Malone was deliberately indifferent to a risk that Lawson was abusing any of his students. See id. (noting that the inquiry is whether supervisor was on notice of conduct that posed a risk of constitutional injury "to citizens like the plaintiff” (emphasis added)).

. Additionally, Malone relies on Jones, 104 F.3d at 627, for the proposition that no rational jury could find a causal link between her deliberate indifference and the constitutional injury suffered by Baynard. We reject Malone’s causation argument on the reasoning of the district court. See Baynard, 112 F.Supp.2d at 529-30.

. Although Beckhoff was aware that Lawson had been seen walking down the hallway of *237 the school with his arm around Baynard, such practices were common among teachers at that time.

. Although the district court and the parties address only the second prong of the Gebser standard' — whether knowledge of discrimination was possessed by an individual with authority to act for the school district — we conclude that the record also supports affirmance on the "actual notice” prong. See Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (explaining that "we may affirm a judgment for any reason appearing on the record”).

. We note that a Title IX plaintiff is not required to demonstrate actual knowledge that a particular student was being abused. We believe that the actual notice requirement could have been satisfied, for example, if Malone had had actual knowledge that Lawson was currently abusing one of his students, even without any indication of which student was being abused.