Roy Edward BELL, Co–Administrator of the Estate of Jeremy Edward Bell, Plaintiff,

v.

BOARD OF EDUCATION OF THE COUNTY OF FAYETTE, John Cavalier, George Matthew Edwards, L.A. Coleman, Douglas Leon Kincaid, Sr., K.R. Carson, Edgar W. Friedrichs, Jr., John Doe, and Jane Doe, Defendants.

No. CIV.A. 5:03–0334.

United States District Court, S.D. West Virginia, Beckley Division.

Nov. 10, 2003.

Wayne D. Inge, Esq., Roanoke, VA, Thomas B. Canterbury, II, Esq., Beckley, WV, Richard A. Peterson, Esq., Peterson & Gula, Greeenville, PA, Timothy P. O'Brien, Esq., Pittsburgh, PA, for Plaintiff.

Eric A. Collins, Esq., Mary Beth Chapman, Esq., Pullin Fowler & Flanagan, Beckley, WV, for Defendants.

### MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

Pending is the motion of all Defendants except Edgar W. Friedrichs, Jr. (Friedrichs) to dismiss this action because its claims are time-barred and because it fails to state a claim pursuant to *Rule* 12(b)(6).

### I. FACTUAL BACKGROUND

The Plaintiff, Roy Edward Bell (Bell), is the co-administrator of the estate of his minor son Jeremy Edward Bell (Jeremy), whom he alleges was killed by Defendant Friedrichs on November 8, 1997. According to the Complaint there were "numerous incidents of unlawful assaults upon Jeremy Edward Bell, including, but not limited to, secret druggings, indecent touchings, and sexual molestation, on various dates preceding the date of his death." (Compl.¶ 1.) Friedrichs was a school teacher and principal employed by the Defendant Fayette County Board of Education (Board) and supervised by Defendants Cavalier, Edwards, Coleman, Kincaid, and Carson, as well as the Jane and John Doe Defendants.[1] The Complaint alleges the supervising Defendants had knowledge that Friedrichs was a pedophile and sexual predator, but failed to take any precautions or actions to protect young male elementary students in the school system and that this conduct constituted a policy, custom or practice of deliberate indifference to the students' welfare.

According to the Complaint, on November 7, 1997 Jeremy's mother Kimberly Ann Ball, entrusted her son to Friedrichs for an overnight camping trip. It is also alleged that "[a]t all times relevant hereto, Friedrichs' contacts, relationships, and/or interactions with Jeremy Edward Bell arose from Friedrichs' position as a teacher and/or principal within the Fayette County School system." (Compl.¶ 12.) Further it is alleged Friedrichs administered amitriptyline and/or chloroform to Jeremy to render him incapable of resistance and then sexually and physically assaulted him. Jeremy died, according to the Complaint, either as a result of head injuries inflicted by Friedrichs and/or as a result of aspiration of his own gastric contents induced by the amitriptyline or chloroform. This action, filed April 15, 2003, is brought under 42 U.S.C. § 1983, alleging Defendants violated Jeremy's constitutional rights, and under Title IX of the Edu-

---

1. According to the Complaint, on January 30, 2002 in the Circuit Court of Fayette County, Friedrichs was convicted of one felony count of first degree sexual abuse and three felony counts of first degree sexual abuse involving sexual abuse by a custodian. The charges involved two former students and pupils at the Beckwith Elementary School where Friedrichs was the principal.

cation Amendments of 1972, 20 U.S.C. § 1681(a), *et seq.* (Title IX).

Defendants move to dismiss because 1) the civil rights action is barred by a two-year state statute of limitations[2] and 2) Plaintiff has not alleged an affirmative causal link between the supervisors' inaction and either his constitutional or statutory injury.

## II. DISCUSSION

### A. Standard of Review

Our Court of Appeals has often stated the settled standard governing the disposition of a motion to dismiss pursuant to *Rule* 12(b)(6), *Federal Rules of Civil Procedure:*

> In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.

*Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993) (citations omitted); *see also Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir. 1996); *Gardner v. E.I. Dupont De Nemours and Co.,* 939 F.Supp. 471, 475 (S.D.W.Va.1996). It is through this analytical prism the Court evaluates Defendants' motion.

### B. Title IX Claim

 Under Title IX:

> No person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education pro-

gram or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). Although Congress only provided for administrative enforcement of Title IX's prohibition against discrimination, the Supreme Court held in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), that Title IX is also enforceable through an implied private right of action. In *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), the Court held that monetary damages can be recovered in a private action under Title IX. It is well-established that sexual contact by a teacher with a student constitutes discrimination based on sex under Title IX. *Baynard v. Malone,* 268 F.3d 228, 237 (4th Cir. 2001); *Smith v. Metropolitan Sch. Dist. Perry Township,* 128 F.3d 1014, 1021 (7th Cir.1997); *see also* Office for Civil Rights, Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties 62 Fed. Reg. 12034, 12039 (1997).

Title IX prohibits discrimination occurring under any educational program or activity. "Program or activity" is defined to include "all operations of a local educational agency ... or other school system." 20 U.S.C. § 1687. "Local educational agency" includes "a public board of education". 20 U.S.C. § 8801.

In *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), the Supreme Court established the parameters of supervisory liability for such discrimination. The Court rejected employer liability based upon principles of agency that apply in suits for sexual harassment under Title

---

**2.** Defendants also argue any wrongful death or assault actions are similarly time-barred. In his response, inadvertently denominated a "reply," Plaintiff states the allegations that

Friedrichs assaulted and killed Jeremy form the factual basis for the § 1983 and Title IX claims and do not state separate causes of action. (Pl.'s Mem. in Supp. at 2.)

VII, that is, *respondeat superior* or constructive notice. *See Gebser*, 524 U.S. at 285, 118 S.Ct. 1989. Instead, the Court determined that there is no liability on the part of a school district in the absence of actual notice on the part of a school district official having, at a minimum, the authority to institute corrective measures on the district's behalf. As the Court later explained, "The high standard imposed in *Gebser* sought to eliminate any risk that the [funding recipient] would be liable in damages not for its own official decision but instead for its employees' independent actions." *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 643, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Gebser*, 524 U.S. at 290–91, 118 S.Ct. 1989).

■ Citing *Davis*, our Court of Appeals explained Title IX liability attaches only where an appropriate official "remains deliberately indifferent to acts of teacher-student harassment *of which it had actual knowledge.*" *Baynard v. Malone*, 268 F.3d 228, 238 (4th Cir.2001)(citing *Davis*, 526 U.S. at 642, 119 S.Ct. 1661)(emphasis added in *Baynard* ). The actual knowledge need not be "that a particular student was being abused," but could be satisfied by knowledge that the teacher was "currently abusing one of his students, even without any indication of which student was being abused." *Id.* at 238 n. 9. This is a high standard, that requires *actual* knowledge of *current* abuse by the teacher.

In this case, there is no doubt the Board is an authority invested with the power to take corrective action.[3] The Complaint alleges: "the Board and Supervising Defendants had knowledge that Friedrichs ... was a pedophile and a sexual predator with a reported history of sexual abuse of young, male elementary school children enrolled in the Fayette County School system and elsewhere." (Compl.¶ 6.) The allegation of knowledge Friedrichs was a pedophile and sexual predator is repeated elsewhere in the Complaint, but there are no allegations of knowledge of *current* abuse. In his response memorandum Plaintiff discusses other evidence he offers to put forward in the event the Complaint's allegations are found insufficient. According to the response, all the Board defendants had either actual or constructive notice that Friedrichs sexually molested one of his students at Powellton Elementary School some time in 1983–84.[4] During the time frame closer to or contemporaneous with Jeremy's alleged abuse, Bell also claims there is evidence Friedrichs physically assaulted one of his students at Falls View Elementary School some time in 1995, breaking some of the child's ribs, and all Board Defendants employed at that time had either actual or constructive knowledge. Physical assault is not based on sex, however, so to constitute a Title IX violation. None of the allegations, actual or proffered, is sufficient to state a claim under Title IX in this circuit because there is no claim any Defendants had actual knowledge of current sexual abuse and, accordingly, Plaintiff's Title IX claim must be **DISMISSED** under *Rule* 12(b)(6).

---

3. The positions of the other supervising Defendants are not known.

4. This proffered allegation would satisfy the standard proposed by the dissent in *Baynard,* requiring the appropriate official to have actual knowledge of at least a substantial risk of sexual abuse or discrimination. *Baynard*, 268 F.3d at 240 (Michael, J. dissenting). But that is not the standard adopted by the *Baynard* court, which, as the dissent notes, would "let a school board off the hook if its official knew that a teacher had abused a student in the past as long as the official did not know of any current abuse." *Id.*

## C. Section 1983 Claims

 Section 1983 provides a damages remedy against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the federal constitution or laws. *See* 42 U.S.C. § 1983. Wrongful death violates the constitutional proviso that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. Sexual molestation of a student by a teacher is also a constitutional injury. *Baynard,* 268 F.3d at 235 n. 4. Bell seeks to hold Friedrichs' supervisors liable for failing to protect Jeremy.

Defendants contend these claims are barred by the relevant statute of limitations and that, in any case, Bell has not alleged an affirmative causal link required to state a claim for supervisory liability under § 1983. When the alleged violations occurred, Jeremy was a twelve-year-old child who died, ostensibly as a result of some of the violations. His father, as representative of his estate, brings this action. Under these circumstances, the Court first must examine whether these claims survive Jeremy's death, the appropriate statute of limitations to apply, the proper rules of claim accrual, and whether tolling may extend the limitations periods.

### 1. Survival of the claims

 In *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), the Supreme Court held that because federal law does not "cover every issue that may arise in the context of a federal civil rights action," § 1988 instructs courts to turn to " 'the common law, as modified and changed by the constitution and statutes of the [forum] State,' " as long as these are " 'not inconsistent with the Constitution and laws of the United States.' " *Id.* at 588, 98 S.Ct. 1991 (quoting 42 U.S.C.1988).[5]

 Generally, one may not sue for the violation of another's civil rights. *McGowan v. Maryland,* 366 U.S. 420, 429, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Under *Robertson,* however, a cause of action under the Civil Rights Act survives the complainant's death if the cause of action would survive under the appropriate state law. *Robertson,* 436 U.S. at 594, 98 S.Ct. 1991. No West Virginia law squarely answers the question whether a § 1983 action survives the death of the party wronged. *See Jones v. George,* 533 F.Supp. 1293, 1300 (S.D.W.Va.1982)(same conclusion in 1982). Nor is there a West Virginia law paralleling the federal statute. *Id.* The Court then must examine West Virginia law to determine survivability of Jeremy's underlying claims, one for sexual abuse and the second for wrongful death.

The general state survival statute is *West Virginia Code* § 55–7–8a, which provides "In addition to the causes of action which survive at common law, causes of action for . . . injuries to the person and not resulting in death . . . also shall sur-

---

5. Title 42 U.S.C. § 1988 provides, in relevant part:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal causes is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

42 U.S.C. § 1988 (emphasis added).

vive[.]" W. Va.Code § 55–7–8a(a). Bell does not allege the sexual abuse Jeremy suffered from Friedrichs led to his death, except possibly for the final incident. Thus, this is a claim for personal injury not leading to death that survives Jeremy's death under West Virginia law.[6] As a surviving claim, this is Jeremy's claim and the procedure for its continuing prosecution is governed in pertinent part by *West Virginia Code* § 55–7–8a. However, the claim that Jeremy was constitutionally deprived when he was killed by Friedrichs does not survive under § 55–7–8a because those actions resulted in death.

 The Court next must consider whether Jeremy's estate may maintain an action based on the violation of Jeremy's constitutional rights leading to or embodied in his death under § 1983. Such an action might comprise either a wrongful death claim or a claim for violation of his family's constitutional rights, as represented by Jeremy's estate, but the Complaint does not make the latter claim.[7] A wrongful death claim is a derivative action for the benefit of the decedent's beneficiaries. *See* Syl. Pt. 4, *Davis v. Foley,* 193 W.Va. 595, 457 S.E.2d 532 (1995). It is distinguished from a claim of a decedent that survives his death. The United States Supreme Court has not resolved the issue of whether wrongful death claims may be pursued under § 1983, nor has our Court of Appeals addressed the question.

Several courts have considered that the absence of a federal wrongful death rule for § 1983 cases is a "deficiency" in the federal law that, under § 1988, should be resolved by reference to state law. *See, e.g., Delesma v. City of Dallas,* 770 F.2d 1334, 1337 (5th Cir.1985); *Grandstaff v. City of Borger,* 767 F.2d 161, 172 (5th Cir.1985); *Brazier v. Cherry,* 293 F.2d 401, 408 (5th Cir.1961); *O'Connor v. Several Unknown Correctional Officers,* 523 F.Supp. 1345, 1348 (E.D.Va.1981). Among them is the only court in this district to consider the issue. *Jones v. George,* 533 F.Supp. 1293 (S.D.W.Va.1982)(Staker, J.). However, the Supreme Court stated in *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), that

**6.** *Jones* held that claims of false arrest and imprisonment and deliberate indifference to medical needs leading to death abated under the West Virginia survival of actions statute, a result inconsistent with the majority of federal courts considering the issue under similar state laws. *See* Martin A. Schwartz, John E. Kirklin, Section 1983 Litigation § 13.2, 78 & n. 26 (3d ed. 1997)("The dominant theme of these decisions is that a federal rule of survivorship is necessary to carry out the policy of deterring constitutional violations by state and local officials that result in death"). *Jones'*s result does not affect this action, where the injury of sexual abuse is not alleged to have led to Jeremy's death.

**7.** The only constitutional rights the Complaint alleges were violated are Jeremy's. (Compl.¶ 22.) The injuries alleged to the estate's beneficiaries are sorrow, mental anguish, anxiety, and deprivation of the society, companionship, comfort, guidance, and advice of Jeremy, as well as loss of his income.

(*Id.* ¶ 19.) Also it is alleged the estate incurred medical and funeral expenses of approximately ten thousand dollars ($10,-000.00). (*Id.* ¶ 20.)

The Fourth Circuit rejected a claim by the estate of a man shot and killed by a state trooper for violation of the wife and children's substantive due process "right" to enjoy the "life, love, comfort and support of their husband and father without state interference." *Shaw v. Stroud,* 13 F.3d 791, 797 (4th Cir.1994). Noting that the "Supreme Court has never held that the protections of substantive due process extend to claims based on governmental action which affects the family relationship only incidentally," our Court of Appeals declined to sanction such a claim. *Id.* at 805 (citations omitted).

Because the Complaint does not allege violation of Jeremy's beneficiaries' constitutional rights and, in any case, such a claim is not recognized in this circuit, the Court does not discuss it further.

§ 1988 does not "authorize the federal courts to borrow entire causes of action from state law." [8] *Id.* at 702, 93 S.Ct. 1785; *see also Runyon v. McCrary,* 427 U.S. 160, 184–86, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). The Sixth Circuit then adopted the view that it is not appropriate in a § 1983 action for a federal court to borrow an independent state wrongful death cause of action. *Jaco v. Bloechle,* 739 F.2d 239 (6th Cir.1984); *Hall v. Wooten,* 506 F.2d 564 (6th Cir.1974). On the other hand, the Tenth Circuit found that "[w]rongful death statutes create new causes of action [only] in the most technical sense simply because such actions were unknown at common law and the decedent's survivors did not have a cause of action for the decedent's personal injuries while he lived." *Berry v. Muskogee,* 900 F.2d 1489, 1504 (10th Cir.1990).

Indeed West Virginia's wrongful death act might appear on its face to be a species of survival statute, which provides that the cause of action the decedent would have had, he had lived, may be maintained by his personal representative:

> Whenever the death of a person shall be caused by a wrongful act, [which] is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who ... would have been liable if death had not ensued, shall be liable to an action for damages[.]

W. Va.Code § 55–7–6.

> Every such action shall be brought by and in the name of the personal representative of such deceased person[.]

W. Va.Code § 55–7–7.

The Supreme Court of Appeals of West Virginia has consistently held, however, that the act does not revive the deceased's cause of action in the personal representative, but gives "an entirely new cause of action" based upon the loss sustained by the beneficiaries of the recovery. *See, e.g., Burgess v. Gilchrist,* 123 W.Va. 727, 17 S.E.2d 804, 806 (1941); *Dunsmore v. Hartman,* 140 W.Va. 357, 362, 84 S.E.2d 137, 140 (1954). Under the Supreme Court's holding in *Moor, supra,* the West Virginia wrongful death action, as a new and independent cause of action, is not available for borrowing under § 1988 to remedy deficiencies in the civil rights law in a § 1983 action by Bell's estate alleging constitutional violations that led to its decedent's death. For this reason, the Court DISMISSES Bell's constitutional claims related to Jeremy's wrongful death.

### 2. Statute of limitations, accrual and tolling

▮▮▮▮▮ Because there is no federal statute of limitations applicable to § 1983 actions, the applicable provision also must be borrowed from the analogous state statute of limitations. *See National Advertising Co. v. City of Raleigh,* 947 F.2d 1158, 1161 (4th Cir.1991). The analogous state statute of limitations most appropriate for § 1983 actions is the limitation period for personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). "Where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). In West Virginia that period is two years. W. Va. Code § 55–2–12(b)("Every personal action for which no limitation is otherwise pre-

---

**8.** *Jones v. George* does not acknowledge or consider the effect of *Moor* on the wrongful death issue.

scribed shall be brought: ... (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]")

Jeremy's injury, the deprivation of his constitutional rights to be free of sexual abuse, accrued at the latest at the time of his death. Jeremy died on November 8, 1997. In this civil rights action the injury complained of is the deliberate indifference of Friedrichs' supervisors to his conduct leading to Jeremy's injuries. When that claim accrued is a related but independent question. Plaintiff argues he had no information that Friedrichs' supervisors had been deliberately indifferent to Friedrichs' conduct that endangered Jeremy until an investigator hired by the family provided a report about the Fayette Board of Education on April 15, 2001. The action was brought on April 15, 2003.

 While the appropriate statute of limitations is given by state law, the "time of accrual of a civil rights action is a question of federal law." *National Advertising*, 947 F.2d at 1162 (quoting *Cox v. Stanton*, 529 F.2d 47, 49 (4th Cir.1975)). "Federal law holds that the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* As the Fourth Circuit stated the federal standard, a § 1983 "cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice—e.g. by the knowledge of the fact of injury and who caused it—to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." *Nasim v. Warden*, 64 F.3d 951, 955 (4th Cir.1995). Commenting on this federal rule, the Supreme Court stated that once a party is placed on inquiry notice, "the dis-

covery rule would trigger the limitations period at that point, only if a reasonable person in her position would have learned of the injury in the exercise of due diligence." *TRW Inc. v. Andrews*, 534 U.S. 19, 30, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)(citing *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir.1992)) ("The duty of inquiry having arisen, plaintiff is charged with whatever knowledge an inquiry would have revealed.")(other citation omitted).

When the inquiry duty arose in this case, whether Plaintiff employed due diligence to inquire, and when he should have known of the supervisors' alleged malfeasance are all fact questions not amenable to a motion to dismiss. Dismissal should not be granted unless "it appears certain that the Plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan*, 7 F.3d at 1134.

 The parties also have argued whether Defendants fraudulently concealed their knowledge of and indifference to Friedrichs' other bad conduct relevant to the allegations here. When a federal court borrows a state limitations period, it should also adopt its tolling rules because they are "an integral part of a complete limitations policy," as long as the tolling rules are not inconsistent with the policies behind § 1983. *Board of Regents v. Tomanio*, 446 U.S. 478, 488, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Under West Virginia law, "mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of a statute of limitations." *Cart v. Marcum*, 188 W.Va. 241, 245, 423 S.E.2d 644, 648 (1992). To toll the statute's running, "a plaintiff must make a strong showing of fraudulent concealment,[9] inability to com-

---

9. Federal law also recognizes the equitable doctrine of fraudulent concealment or "equitable tolling," which "is read into every federal statute of limitations." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Where fraudulent conduct prevents the Plaintiff from being diligent, it is unfair to bar the action "because of mere lapse of time." *Id.* at 396, 66 S.Ct. 582.

prehend the injury, or other extreme hardship[.]" *Id.* The contention raises further questions, which ultimately must be determined by a fact-finder.

⬛ Because Jeremy was an infant at the time of his injury, Plaintiff also argues the general saving statute as to persons under disability, W. Va.Code § 55–2–15, should apply to toll the running of the statute of limitations. The saving statute provides:

> If any person to whom the right accrues to bring any such personal action ... shall be, at the time the same accrues, an infant ... the same may be brought within the like number of years after his becoming of full age or sane that is allowed to a person having no such impediment to bring the same after the right accrues ... except that it shall in no case be brought after twenty years from the time when the right accrues.

W. Va.Code § 55–2–15. The question whether the savings statute applies to an action brought by the administrator of an infant's estate has not been addressed by West Virginia courts.[10] The majority of state courts considering similar statutes have held that the tolling provision does not apply to a parent's action arising out of the infant's injury. *See* John H. Derrick, Annotation, *Tolling of statute of limitations, on account of minority of injured child, as applicable to parent's or guardian's right of action arising out of same injury,* 1986 WL 361568, 49 A.L.R.4th 216 (1986). As in West Virginia, these statutes ordinarily apply by their plain terms to persons below the age of majority at the time of accrual and courts have found they

thus foreclose the parent from taking advantage of the tolling provision. *Id.* On the other hand, as discussed above, Bell's sexual abuse claim survives under *West Virginia Code* § 55–7–8a, which provides that actions brought after the death of the injured party "shall be instituted within the same period of time that would have been applicable had the injured party not died." W. Va.Code § 55–7–8a(c). That provision clearly invokes the applicable statute of limitations, in this case two years. The question remains whether it also invokes the tolling provisions of the saving statute for minors, another issue West Virginia courts have not considered.

⬛ To recount the situation, this is a § 1983 action brought by the administrator of a minor's estate, which is based on the alleged constitutional violations that accompanied the minor's sexual abuse by a teacher or principal. While the action survives the minor's death under West Virginia law, it is not an action by a minor but one by a competent adult. As elucidated by the Supreme Court of Appeals of West Virginia, the savings statute:

> prevent[s] the statute of limitations from running against a person who is under a disability and who, therefore, has little or no access to the courts. It is designed to mitigate the difficulties of preparing and maintaining a civil suit while the plaintiff is under a disability. It grants no additional rights to such persons, but merely prevents the statute of limitations from running against them until their disabilities have been removed.

---

**10.** The parties cite *Miller v. Monongalia County Bd. of Educ.,* 210 W.Va. 147, 556 S.E.2d 427 (2001), for the proposition the discovery rule applies to the savings statute to extend the statutory filing period. They disagree whether Plaintiff meets the conditions for invoking the rule. This argument is irrelevant to the issues in this case. Jeremy Bell

was twelve years old when he died in 1997. Had he lived, he would have been eighteen in 2003 and would then have had the two years of the statute of limitations to file a personal injury or constitutional claim on his own behalf. There is no need to invoke the discovery rule to extend the limitations period further.

*Glover v. Narick,* 184 W.Va. 381, 392, 400 S.E.2d 816, 827 (1990). Plaintiff here is under no disability interfering with his access to the courts. In a sad, legalistic sense, Jeremy's incompetency as a minor ended with his death. Plaintiff in this civil rights action is an adult who is not under any disability and the savings statute, § 55–2–15, does not toll the running of the statute of limitations on this § 1983 action, although it is based on the injuries of an infant.[11]

The Court **DENIES** Defendants' motion to dismiss the remaining § 1983 cause of action as time-barred, **without** prejudice to renew the motion when the facts underlying the discovery rule tolling arguments have been developed sufficiently, recognizing the issue may require jury determination.

### 3. Causal nexus

■■■■ Bell, on behalf of Jeremy's estate, seeks to hold the Fayette County Board and Friedrichs' other supervisors liable for the constitutional injuries inflicted by their failure to oversee him and prevent the harm to Jeremy. "Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994). To establish supervisory liability under § 1983, a plaintiff must demonstrate:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk

of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw,* 13 F.3d at 799 (internal quotation marks omitted). Defendants contend Bell's Complaint fails to allege the "affirmative causal link" between Defendants' inaction and Jeremy's constitutional injury.

The Complaint states the school system officials "had knowledge that Friedrichs was a pedophile and sexual predator [and] in spite of such knowledge, failed to take any precautions or actions to prevent Friedrichs from inflicting harm upon young, male elementary children enrolled in the Fayette County School system."[12] (Compl.¶ 10.) It further alleges, "At all times relevant hereto, Friedrich's [sic] contacts, relationships, and/or interactions with Jeremy Edward Bell arose from Friedrichs' position as a teacher and/or principal within the Fayette County School system." (*Id.* ¶ 12.) The Complaint also alleges Friedrichs' sexual abuse of Jeremy. As noted elsewhere, *Rule* 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a). The allegations of the Complaint satisfy the *Rule* 8 pleading standard, which is not high or demanding.

---

**11.** Note that, if the injured infant were not dead, he would be able to claim the tolling advantage of the savings statute on his own § 1983 cause of action where West Virginia law applies.

**12.** Defendants also assert the Complaint fails to allege properly the Defendants' negligent hiring, supervision and retention of Fried-

richs proximately caused the assault on Jeremy. (Defs.' Mem. in Reply at 5.) The allegation school officials failed to take any "precautions or actions" sufficiently alleges these Defendants' response was inadequate. (Compl.¶ 10.); *see* Fed.R.Civ.P. 8(a)(claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

In *Shaw v. Stroud*, our Court of Appeals explained that in § 1983 supervisor liability actions:

> [c]ausation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff. This concept encompasses cause in fact and proximate cause. In Slakan, we noted that the "proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . [or] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his actions."

*Id.*, 13 F.3d 791, 799 (1994)(citing *Slakan v. Porter*, 737 F.2d 368, 376 (4th Cir.1984))(other citations omitted). Issues of proximate cause involve "application of law to fact, which is left to the factfinder." *Exxon Co. U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840–41, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996). Whether the causal nexus between the supervisory actions or inaction and Jeremy's constitutional injuries ultimately is established is a question of fact that must be left for the appropriate time. Defendants' motion to dismiss for failure to state a § 1983 supervisory liability cause of action under *Federal Rule of Civil Procedure* 12(b)(6) is **DENIED**.

### III. CONCLUSION

Defendants' motion to dismiss Bell's Title IX claims for failure to state a cause of action under *Rule* 12(b)(6) is **GRANTED**. Their motion to dismiss Bell's § 1983 claims is **GRANTED** with regard to deprivation of Jeremy's constitutional rights denied him by the manner of his death, however, the motion is **DENIED** with regard to deprivation of Jeremy's constitutional rights involved in his alleged sexual abuse by Friedrichs.

The Clerk is directed to send a copy of this Order to counsel of record. The Memorandum Opinion and Order is published on the Court's website at http://www.wvsd.uscourts.gov.

### *JUDGMENT ORDER*

In accordance with the Memorandum Opinion and Order entered this day, the Court, having determined there is no just reason for delay, **DIRECTS** entry of final judgment in favor of Defendants on Plaintiff's Title IX claims and the claim under 42 U.S.C. § 1983 arising from his decedent's wrongful death and **ORDERS** these claims be **DISMISSED** with prejudice.

The Clerk is directed to send a copy of this Judgment Order to counsel of record.