In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3506

G.G.,

*Plaintiff-Appellee,*

*v.*

KAREN GRINDLE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 473—**William J. Hibbler**, *Judge.*

ARGUED OCTOBER 27, 2011—DECIDED NOVEMBER 23, 2011

Before FLAUM, KANNE, and WOOD, *Circuit Judges.*

FLAUM, *Circuit Judge.* A jury found Karen Grindle guilty of claims brought pursuant to 42 U.S.C. § 1983 and 20 U.S.C. § 1681 for her failure to prevent the sexual abuse of several female middle school students by their band teacher, Robert Sperlik. Grindle was the principal of the South Berwyn School District 100 when the abuse occurred; Sperlik pled guilty to multiple counts of aggravated kidnaping and aggravated criminal sexual abuse.

Grindle now appeals the jury's compensatory and punitive damages award as to one plaintiff, G.G. For the reasons set forth below, we affirm.

## I. Background

### A. Factual Background

This appeal follows a jury verdict in favor of G.G., and eight other plaintiffs, on claims brought pursuant to 42 U.S.C. § 1983 and 20 U.S.C. § 1681. Grindle was the principal of the South Berwyn School District 100 when Sperlik's sexual abuse occurred. Plaintiffs alleged that Grindle had knowledge and/or reason to believe that Sperlik was engaging in sexual misconduct with female students, yet failed to take sufficient action to prevent and stop the abuse. The jury found in favor of all nine plaintiffs and awarded G.G. $250,000 in compensatory damages. The jury also awarded punitive damages in the amount of $100,000 to be divided among the nine plaintiffs.

G.G. began taking flute lessons with Sperlik while a fifth grader at Pershing Elementary School. At trial, G.G. testified that Sperlik made inappropriate sexual contact with her on two occasions; both incidents occurred when she was ten years old. G.G. was the youngest of Sperlik's victims. The first incident involved Sperlik placing his hands on her neck, massaging her left shoulder, and then lowering his hands until he touched her breast. The second incident occurred when Sperlik began "tapping the beat" on G.G.'s left leg. He then moved his

hand up past her knee and placed it in the middle of her thigh. At that point, G.G. became scared and "flinched," jumping to the next seat.

G.G. acknowledged at trial that she had a difficult childhood. She experimented with drugs, became sexually active at a young age, cut herself with razor blades, and experienced difficulties dealing with her weight, her peers, and her family. G.G. attempted suicide in the summer of 2008 and was briefly hospitalized following that attempt. At the trial, G.G. acknowledged that she did not "blame[] Mr. Sperlik for all the problems [she'd] had in [her] life." However, she also stated that his abuse was very much part of her life and that she would "have to live with it for the rest of my life." G.G. began to see a counselor shortly after disclosing Sperlik's abuse to her family. She has been seeing a counselor for the past six years (she is now sixteen). G.G. has also been prescribed medication to help her deal with depression, mood swings and attention deficit hyperactivity disorder ("ADHD").

Kelli Underwood, G.G.'s counselor since 2006, testified at the trial. Underwood is the director of child and family programs at the Center for Contextual Change. Underwood explained that G.G. was diagnosed with post-traumatic stress disorder ("PTSD") as a result of Sperlik's abuse. In discussing G.G.'s diagnosis, Underwood noted that G.G. was only ten years old when she was abused. G.G. described "a lot of horror and fear and anxiety around [the abuse]" and had "dreams, nightmares, about what had happened and different versions of nightmares

around Mr. Sperlik." G.G. soon avoided situations that reminded her of what happened with Sperlik, including pom-pom, volleyball, basketball and band. Underwood testified that there was nothing else in G.G.'s history that was sufficiently traumatic to cause her symptoms of PTSD other than Sperlik's sexual abuse.

Underwood explained that when assessing the impact of sexual abuse upon a victim, "[i]t's not about the actual contact, [because] so much of sexual abuse is about the psychological and emotional damage that's done . . . its not just the event, but how it affected the person that determines whether they end up with PTSD." Underwood concluded that:

> this event [Sperlik's abuse] did cause her pretty severe distress and damage emotionally, that it really changed her in terms of her ability to trust people, particularly males and teachers. It was a traumatic experience for her, that she's had trouble—more trouble than other kids who maybe go through this. She's had more trouble overcoming this for all kinds of reasons.

Details regarding the other eight plaintiffs were also revealed at trial. Sperlik's conduct toward certain other plaintiffs was more prolonged and explicit than his conduct toward G.G. As an example, C.E. was a band student during her fourth, fifth and sixth grade years. Throughout those years, Sperlik's conduct toward C.E. escalated from touching her thighs to touching her private areas.

**B. Procedural Background**

After entering a verdict for the plaintiffs, the jury awarded a wide range of compensatory damages. Two plaintiffs, C.E. and T.A., were each awarded $750,000. Plaintiffs K.B. and A.T. were each awarded $500,000. G.G., along with two other plaintiffs were awarded $250,000. The final two plaintiffs were awarded $100,000. The jury also awarded $100,000 in punitive damages collectively. Following the jury's verdict, all plaintiffs except G.G. settled with Grindle for undisclosed compensatory and punitive damages, and attorneys' fees. As to G.G., Grindle filed a post-trial motion for remittitur, arguing that the evidence presented at trial did not support a compensatory damages award of $250,000. The district court denied this motion. Grindle also asked that the punitive damages award be stricken, or in the alternative, that G.G. be allowed to recover either one-ninth ($11,000), or her *pro rata* share ($7,250) of the total award of $100,000. G.G., through her counsel, agreed to accept a *pro rata* share of the total punitive damages.

## II. Discussion

### A. Compensatory Damages

We review a district court's order refusing remittitur for abuse of discretion. *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 446 (7th Cir. 2010). When the reasonableness of a jury's verdict is called into question, we employ a multi-factor test to assist in our analysis and consider

whether (1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases. *Id.*; *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 566 (7th Cir. 2006). Great deference must be given to the jury's verdict, because "[t]he district court and the jury are in a superior position to find facts and determine a proper damages award." *Farfaras*, 433 F.3d at 566.

Our discussion begins with the second factor, as this court has acknowledged that "monstrously excessive" is "a rather vague standard for review" which should be folded into the rational inquiry analysis. *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 n.13 (7th Cir. 1995). Grindle argues that the jury's compensatory award was not based upon Sperlik's conduct towards G.G., but rather, the totality of his conduct towards all of the plaintiffs. As such, her compensatory award is out of step with the two relatively "innocuous" instances of Sperlik's misconduct. Underwood refutes this theory. Her testimony revealed that it is not the extent of the inappropriate conduct that we must focus on, but rather the impact of such conduct. G.G. was the youngest of Sperlik's victims, and only ten years old when the abuse took place; Underwood testified that Sperlik's abuse "did cause her pretty severe distress and damage emotionally." Furthermore, the jury's compensatory damages awards fell along a wide spectrum, reflecting careful consideration of the circumstances of each individual plaintiff.

Grindle next argues that other factors, unrelated to Sperlik's abuse, caused G.G.'s destructive behavior. The record is clear, however, that Sperlik's abuse played a major role in G.G.'s troubled acts. Testimony established that G.G. suffered from PTSD as a result of Sperlik's conduct and that his actions caused her "horror, fear and anxiety." G.G. also disengaged from friends, withdrew from family, and began an unhealthy course of conduct including cutting herself, experimenting with illegal drugs and becoming sexually active. Underwood testified that these behaviors resulted from Sperlik's abuse. Grindle goes on to argue that the causal connection that Underwood drew between G.G.'s behavior and Sperlik's actions should not carry significant weight because G.G. herself draws no connection between his actions and her behaviors. This contention is meritless. The question here is whether there is a rational connection between the evidence and the jury's verdict. That G.G. did not blame Sperlik *solely* for her difficulties in life is of no moment. Underwood explained the impact of Sperlik's actions on G.G., and G.G. herself explained that she would live with the repercussions of Sperlik's abuse for the rest of her life. Accordingly, we find a rational connection between the ample evidence presented at trial showing the effect Sperlik's over the years, and the jury's award.

In comparing G.G.'s award to those of other plaintiffs, $250,000 falls in the low range of verdicts awarded to the nine plaintiffs. For example, two plaintiffs were each awarded $750,000, and another two were each awarded $500,000. G.G., along with two other plaintiffs were

awarded $250,000 a piece, while a final two plaintiffs were awarded $100,000. Looking to other cases, neither G.G. nor Grindle put forth cases within this Circuit as comparators. However, we note that in *Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001), the Fourth Circuit affirmed a jury verdict against a school principal for her deliberate indifference to a student's sexual abuse by a teacher. *Id*. There, the jury awarded the victim $350,000 in compensatory damages as to the principal. Notably, Grindle is unable to point to any similar case where compensatory damages were significantly lower.

We find that the jury's compensatory award reasonable in light of the evidence presented at trial, and affirm the district court's order refusing remittitur.

### B. Punitive Damages

Grindle suggests in her reply that we should review the punitive damages award de novo, the standard used when considering whether such an award is so grossly excessive such that it offends due process. No such due process argument was made, however. Instead, Grindle argues that the punitive damage award is excessive in light of the evidence presented. When considering excessiveness, we review an award of punitive damages for abuse of discretion and will only set aside a jury's award of such damages "if we are certain that it exceeds what is necessary to serve the objectives of deterrence and punishment." *Hendrickson v. Cooper*, 589 F.3d 887, 894 (7th Cir. 2009) (citing *EEOC*, 55 F.3d at 1287).

The jury awarded the collective plaintiffs $100,000 in punitive damages, and G.G.'s attorney agreed to recover only her *pro rata* share ($7,250) of the award. The gravamen of Grindle's argument against the punitive damage award is twofold. First, she contends that the award is a reflection of the jury's outrage at Sperlik's conduct, rather than her own. This ignores that the jury found her guilty of turning a blind eye to warning signs that Sperlik was abusing his students, and attempts to marginalize her culpability. Next, Grindle argues that because she was not directly engaged in the acts of brutality against the plaintiffs, the award is excessive. Grindle laments that prior to trial, plaintiffs and Sperlik cut a deal whereby plaintiffs agreed not to pursue punitive damages against Sperlik; as a result, Grindle was the only individual defendant against whom punitive damages could be assessed. Again, this argument fails to acknowledge that she was found guilty of having knowledge of abuse, yet failing to act. "Punitive damages are appropriate when the defendant acted wantonly and willfully, or was motivated in his actions by ill will or a desire to injure." *Hagge v. Bauer*, 827 F.2d 101, 110 (7th Cir. 1987). Grindle has put forth no basis for invalidating the jury's determination that her conduct justified the imposition of punitive damages.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.