329 F.Supp.2d 762 (2004)
Tony Dean ARBAUGH, Jr. Plaintiff,
v.
BOARD OF EDUCATION, the COUNTY OF PENDLETON, a public corporation, Ferlin Heavener, individually, and in his capacity as an employee of the Pendleton County Board of Education, Calvin Thompson, individually, and in his capacity as Principal at Circleville School for the Pendleton County Board of Education, and West Virginia Department of Health and Human Resources, a government entity, Defendants.
No. CIV.A.2:01 CV 50.
United States District Court, N.D. West Virginia.
August 6, 2004.
*763 Lary D. Garrett, Jack Walters, Moorefield, WV, Jeffrey R. Roth, Roth Legal Services, LC, Petersburg, WV, for plaintiff Tony Dean Arbaugh, Jr.
Jacquelyn J. Core, Steptoe & Johnson, Morgantown, WV, Henry E. Brown, Steptoe & Johnson, Clarksburg, WV, for defendant Board of Education, The County of Pendleton, a public corporation.
R. Mike Mullens, Elkins, VA, for defendant Ferlin Heavener, individually, and in his capacity as an employee of the Pendleton County Boad of Education.
Tamara J. DeFazio, Spilman, Thomas & Battle, Morgantown, WV, for defendant Calvin Thompson, individually, and in his capacity as Principal at Circlville School for the Pendleton County Board of Education.
P. Gregory Haddad, MacCorkle, Lavender, Casey & Sweeney, PLLC, Morgantown, WV, for defendant West Virginia Department of Health and Human Resources, a governmental agency.
*764 Jeffrey D. Taylor, Rose, Padden & Petty, LC, Fairmont, WV, for defendant Children's Home Society of West Virginia.

MEMORANDUM OPINION & ORDER
KEELEY, District Judge.
Before the Court are a motion for summary judgment filed by the defendant, Calvin Thompson, and a motion for leave to amend the complaint filed by the plaintiff, Tony Arbaugh. The motions are fully briefed and ripe for review. The Court first GRANTS Arbaugh leave to amend his complaint because the amendment is not prejudicial, in bad faith, or futile. Finding issues of fact with respect to Thompson's liability under 42 U.S.C. § 1983 and state tort law, the Court DENIES summary judgment as to those claims. The Court GRANTS summary judgment, however, as to Arbaugh's cause of action under the West Virginia Human Rights Act and his claim for punitive damages under state law.

I. FACTS
The plaintiff, Tony Dean Arbaugh, Jr., initiated this civil action on July 20, 2001. His complaint enumerated various federal and state law claims against the Pendleton County Board of Education (the "Board"), the West Virginia Department of Health and Human Resources (the "DHHR"), the Children's Home Society of West Virginia, certain employees of those entities, and an individual named Ferlin Heavener. After the dismissal of several claims and parties, four defendants remain: the Board, the DHHR, Heavner, and Calvin Thompson, the former principal at Circleville School. Arbaugh sues these defendants for damages stemming from the repeated sexual abuse that he suffered from Heavener, Arbaugh's former grade school teacher.
Heavner was a school teacher in Pendleton County from 1985 to 1998. During this period, he sexually abused at least six school children. (White Dep. at 228.) He frequently used drugs with these children to facilitate his sexual advances. In 1999, Heavner pled guilty to twenty counts of third degree sexual assault and five counts of the delivery of a controlled substance. With respect to Arbaugh, however, Heavner only pled guilty to delivery of a controlled substance.
Calvin Thompson served as principal of Circleville School from the fall of 1988 until his retirement in the spring of 1994. Heavner taught at Circleville School during this entire period. In Thompson's first year as principal, school athletic director Charles Teter told Thompson that the janitor, Loye Nelson, saw Heavener in the school's hot tub with two or three boys.[1] (Thompson Dep. at 16-17.) According to Nelson, at least one of the boys, Jeremy Propst, was nude. (Nelson Dep. at 8.) Thompson recalls hearing that two of the boys were nude. (Thompson Dep. at 20.) The date of this incident is unclear: Thompson asserts that it occurred one or two years before he became principal, Nelson believes that it occurred while Thompson was principal, and Heavner indicates that it occurred between 1988 and 1990. In any event, no one ever spoke to Heavner about this incident. (Heavner Dep. at 152.) Moreover, Thompson apparently told no one about this incident until 1998, four years after his retirement.
On November 18, 1990, Heavner took two Circleville School students, Jeremy Propst and Charles Bennett, on a sightseeing *765 trip to Canaan Valley, West Virginia. During the trip, Heavner gave alcoholic beverages to the boys. On the way home, the boys became belligerent and angered Heavner. Consequently, Heavner stopped his car and dropped off Propst and Bennett along the side of the road. Heavner drove away, but eventually returned to pick up the boys. When he did so, an altercation ensued between them, injuring Heavner. Heavner complained to the authorities, and a juvenile petition was filed against Propst and Bennett. Sergeant Gary White investigated the matter and ultimately charged Heavner with contributing to the delinquency of minors.
The petitions against Propst and Bennett were consolidated for a juvenile trial. Bennett's petition also included an allegation that he cut the tire of Thompson's vehicle  a matter unrelated to the altercation with Heavner. The juvenile trial was held in January, 1991.
At the juvenile trial, Thompson was called to testify about Propst and Bennett. Although witnesses were sequestered at the trial, Thompson was allowed to remain at counsel table because he was also a victim of Bennett's alleged tire cutting. Thus, Thompson observed the testimony of Sgt. White, who indicated that during the course of his investigation, he came upon reason to believe that Heavner had sexually abused Propst and Bennett.[2] (White Dep. at 20.) During his own trial testimony, however, Thompson made no mention of the alleged "hot tub incident" with Heavner and the boys. Nonetheless, Thompson later told Sergeant White that "he wished he would have been asked about the conduct of Ferlin Heavner when he was testifying." (Letter from White to Moomau of 2/5/91.) Thompson indicated that he would have testified that he and county schools superintendent Ron Whetzel had counseled Ferlin Heavner "on several occasions regarding his involvement with these `boys' at the school during evening hours [and] that he warned [Heavner] that this behavior was going to get him in trouble." (Id.)
On January 30, 1991, Heavner was convicted on two counts of contributing to the delinquency of a minor by the Magistrate Court of Pendleton County, West Virginia. Heavner appealed his conviction to the Circuit Court of Pendleton County, which acquitted him in May, 1991. Heavner now admits, however, that he gave alcohol to Propst and Bennett during the Canaan Valley trip and was guilty of the contributing charges.
Arbaugh entered Heavner's fourth grade class in September 1992. He subsequently failed fourth grade, which required him to repeat the grade and remain in Heavner's class for the next school year. During that two year period, Heavner often drove Arbaugh home from school. At some point, the two eventually began to use drugs and alcohol together after school hours. Heavner also sexually fondled Arbaugh in the classroom on two occasions. In the summer of 1994, after Arbaugh's "second" fourth grade year, Heavner initiated sexual intercourse with Arbaugh. In the following three years, Heavner and Arbaugh engaged in oral and anal sex numerous times.
In 1998, local law enforcement authorities launched a criminal investigation of Heavner's sexual abuse and drug activities. In the course of this investigation, Sergeant Steve Dawson questioned Thompson about his knowledge of Heavner's interaction with boys at the Circleville School. Thompson stated that, during his tenure *766 as principal, "there were always rumors among the teachers that Ferlin was involved with young boys." (Thompson statement of 9/8/98, at 1.) When asked if he personally observed Heavner engage in possibly inappropriate behavior, he indicated that he "saw [Heavner] in his car with young boys after [school] hours and in Franklin with boys in his car," but not in the school building. (Id.) He also stated the following:
[In about 1993,] Doug Wimer came and told me he had caught Ferlin with a young boy at the cemetery 4-U Motel. Belvie Bennett also told me of an incident where Robert Propst came in from being outside with Ferin in his vehicle with his pants unfastened and drunk. Belvie told me point blank that Ferlin was having sex with the boys.
(Id. at 1-2.) Although Thompson subsequently qualified his police statement in his deposition, Sgt. Dawson stated that Thompson reviewed, affirmed, and signed the statement without changing it. (Dawson Dep. at 17.)

II. STANDARD OF LAW
A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to draw reasonable inferences from the facts in a light most favorable to the nonmoving party. Id. at 255, 106 S.Ct. 2505.
The moving party has the burden of initially showing the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings but instead must have evidence showing that there is a genuine issue for trial. Id. at 324, 106 S.Ct. 2548.

III. ANALYSIS

A. Motion to Amend
Arbaugh moves to amend his complaint in order to clearly articulate a claim against Thompson pursuant to 42 U.S.C. § 1983. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely given when justice so requires." "In fact, such leave `should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" Franks v. Ross, 313 F.3d 184, 193 (4th Cir.2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999) (emphasis in original)).
Thompson contends that Arbaugh must first satisfy the "good cause" requirement under Rule 16(b) for modification of scheduling orders[3] before the Court can *767 apply the more liberal standard for leave under Rule 15(a). See, e.g., Marcum v. Zimmer, 163 F.R.D. 250 (S.D.W.Va.1995). In this case, the Court has acknowledged the uncertainty in the law as to whether a party must first show good cause in seeking leave to amend a pleading after entry of a scheduling order. (Mem. Op. & Order, Oct. 6, 2003, dkt. no. 197, at 8.) Upon reviewing the Fourth Circuit's recent published decisions, however, the Court concludes that leave to amend a pleading should be granted unless prejudice, bad faith or futility is shown. See, e.g., IGEN Int'l, Inc. v. Roche Diagnostics GmbH, 335 F.3d 303, 311 (4th Cir.2003); Franks, 313 F.3d at 193; see also Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("Rule 15(a) declares that leave to amend `shall be freely given when justice so requires'; this mandate is to be heeded.") (noting that "the grant or denial of an opportunity to amend is within the discretion of the District Court").
Here, the Court can find no evidence of prejudice, bad faith or futility. Although inartfully drafted, Arbaugh's complaint notified all of the defendants that 42 U.S.C. § 1983 was one of the legal grounds for the suit. The proposed amendment explicitly asserts a § 1983 claim against Thompson based on the facts previously alleged in the complaint. Thus, the amendment neither requires additional discovery nor constitutes a dilatory tactic that could alter or delay the course of the litigation. Moreover, in his brief in reply to the instant summary judgment motion, Thompson proffered a defense to the § 1983 claim, which belies his assertion of prejudice. Finally, as explained below, the proposed § 1983 claim has adequate merit and thus is not futile. Therefore, the Court GRANTS Arbaugh's motion for leave to amend and will consider his § 1983 claim.[4]

B. § 1983 Claim

1. Qualified Immunity
Thompson asserts the defense of qualified immunity in his reply. Qualified immunity protects government officials from suits for civil damages arising out of the exercise of their discretionary functions. This immunity is available when the conduct of a government employee does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Courts undertake a sequential, two-step inquiry to determine whether a state officer is entitled to qualified immunity. Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir.2003).
First, [the court] must decide "whether a constitutional right would have been violated on the facts alleged." "Next, *768 assuming that the violation of the right is established, [the] court[ ] must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable [official] that his conduct violated that right."
Id. (quoting Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), and Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir.2002)). Moreover, "the nature of the right allegedly violated must be defined `at a high level of particularity.'" Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir.2001).
The burdens of proof and persuasion fall on the defendant official claiming qualified immunity. Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir.2003). When ruling upon a qualified immunity issue, a court must consider the alleged facts "in the light most favorable to the party asserting the injury." Saucier, 533 U.S. at 201, 121 S.Ct. 2151.
At issue in this case is Arbaugh's right to be free from his grade school teacher's sexual abuse. Thompson does not dispute that such abuse is a "constitutional injury." See Baynard v. Malone, 268 F.3d 228, 235 n. 4 (4th Cir.2001). Thus, the Court must first consider whether Thompson, in his capacity as principal of Circleville School, can be held liable for Arbaugh's injury under the alleged facts.
"It is well settled that `supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'" Id. (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994)). To establish supervisory liability under § 1983, a plaintiff must demonstrate:
(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.
Id. (quoting Shaw, 13 F.3d at 799).
Thompson challenges the sufficiency of the evidence with respect to the second and third elements of the supervisory liability rule. He first contends that Arbaugh's allegations fail to establish that Thompson was deliberately indifferent. "Deliberate indifference is a very high standard  a showing of mere negligence will not meet it." Id. at 236 (quotation and citation omitted). "Indeed, a supervisory official who responds reasonably to a known risk is not deliberately indifferent even if the harm is not averted." Id. (citing Farmer v. Brennan, 511 U.S. 825, 844, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) and Doe v. Dallas Ind. Sch. Dist., 153 F.3d 211, 219 (5th Cir.1998))
In Baynard, the Fourth Circuit considered whether a reasonable jury could find that a school principal ("Malone") was deliberately indifferent to the sexual abuse committed by a male teacher ("Lawson"). According to the evidence of record, Malone knew the following:
that [a former student] claimed to have been abused by Lawson; that [the school librarian] had observed [another student] sitting on Lawson's lap in a manner [the librarian] believed to be inappropriate; that Lawson was very physical with his students, often putting his arm around them in the halls; and that Lawson frequently took male students *769 on camping trips at which no other adults were present.
Id. at 235. Following the report from the school librarian, Malone "counseled Lawson to limit physical contact with students." She later contacted the school board's personnel director, telling him about the accusation made by the former student and Lawson's excessive physical contact with students. Id. at 233. As instructed by the personnel director, Malone also monitored Lawson's activities in the school. Despite her efforts, however, the Baynard court held that "a rational jury could conclude that Malone was deliberately indifferent to the risk that Lawson was abusing his students, particularly [the plaintiff]." Id. at 236. The Fourth Circuit noted that "a factfinder could reasonably infer that Malone's failure to respond to mounting evidence of potential misconduct by Lawson exhibited deliberate indifference." Id.
Viewing the facts in a light most favorable to the plaintiff, the case at bar is comparable to Baynard in important respects. Like the principal in Baynard, Thompson was aware of several troubling allegations regarding Heavner's conduct with young boys. Thompson also knew that Heavner had spent time alone with boys outside of school. Unlike the principal in Baynard, however, Thompson neither investigated nor reported these allegations. Thus, a reasonable jury could conclude that Thompson was deliberately indifferent to the risk that Heavner was abusing his students.
Thompson also contends that the evidence fails to establish an affirmative causal link between his inaction and Arbaugh's injury. In particular, he maintains that any such causal link "is necessarily severed" by the following facts: 1) his retirement in 1994, which is approximately when Heavner initiated sexual contact with Arbaugh; 2) Heavner's acquittal of the contributing to the delinquency of a minor charges in 1991; 3) Thompson's willingness to cooperate with law enforcement officers; and 4) Thompson's inability as principal to assign, transfer, demote, suspend, or recommend dismissal of Heavner.
The last three "severing factors" cited by Thompson are largely irrelevant to the causation inquiry. That Heavner was (wrongly) acquitted in 1991 did not excuse Thompson from investigating or reporting future suspicions of inappropriate conduct by Heavner. Similarly, Heavner's acquittal did not absolve Thompson's supervisory duties as a principal. Thompson's willingness to cooperate with police officers also does not insulate him from responsibility for Arbaugh's injury. Indeed, cooperation differs substantially from proactive investigation or reporting. Further, Thompson's inability to take adverse employment action against Heavner neither foreclosed all means for Thompson to potentially prevent Arbaugh's injury, nor mitigated Thompson's apparent failure to take any action whatsoever after 1991.
On the other hand, the timing of Thompson's retirement is relevant to causation. Arbaugh became Heavner's student two years before Thompson retired. Although it is unclear if Heavner fondled Arbaugh at school during this time, it is undisputed that they spent time together after school hours between 1992 and 1994. Drawing reasonable inferences from the facts in a light most favorable to Arbaugh, the relationship that developed between Heavner and Arbaugh during that two year period enabled Heavner's sexual abuse in the summer of 1994. By no later than 1991, Thompson was aware of at least some of Heavner's suspicious activities. Therefore, a reasonable jury could find an affirmative causal link between Thompson's inaction and Arbaugh's injury.
*770 Thompson argues that, irrespective of his possible responsibility for Arbaugh's constitutional injury, the right to be free from sexual abuse was not clearly established before September 26, 2001, when the Fourth Circuit decided Baynard. The Court strongly disagrees. In Baynard, the parties did not dispute that the molestation of a school child was a clearly established constitutional injury in 1990, the year of the assault. 268 F.3d at 235 n. 4. Such a stipulation is not surprising because, as early as 1980, the Fourth Circuit had held that "[t]he existence of [the] right to ultimate bodily security[,] the most fundamental aspect of personal privacy[,] is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process." Hall v. Tawney, 621 F.2d 607, 613 (4th Cir.1980) (holding that an unreasonable paddling of a public school student could violate substantive due process rights); see also McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191, 1197 (4th Cir.1996) ("The Due Process Clause of the Fourteenth Amendment affords, as one of its components, `substantive' protection against unreasonable bodily intrusions by state-actors.") (citing Hall, 621 F.2d at 613).
Other courts uniformly hold that the right to be free from sexual abuse  the logical extension of the right to bodily security  is well established. Doe ex rel. Doe v. City of Roseville, 296 F.3d 431, 435, 438 (6th Cir.2002) (finding that the right to be free from sexual abuse was clearly established at least by 1992, the date the plaintiff was allegedly abused); Doe v. Gooden, 214 F.3d 952, 956 (8th Cir.2000) ("There is no question that students have a constitutional right to be free from sexual abuse and sexual molestation under the Fourteenth Amendment.") (citation omitted); Doe v. Taylor Ind. Sch. Dist., 15 F.3d 443, 451-52 (5th Cir.1994) ("It is incontrovertible that bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild and that such misconduct deprives the child of rights vouchsafed by the Fourteenth Amendment."); Stoneking v. Bradford Area Sch. Dist., 856 F.2d 594, 599 (3d Cir.1988) (holding that the plaintiff had "a constitutionally protected right to be free from sexual abuse by her school teachers that was clearly established by 1979"). Therefore, the Court finds that Arbaugh's right to be free from sexual abuse was clearly established during the dates in question.
In conclusion, Thompson cannot meet his burden to prove his defense of qualified immunity. Accordingly, the Court finds that, under the alleged facts, a reasonable jury could hold Thompson liable for Arbaugh's injuries.

C. State Tort Claim

1. Statutory Immunity
Thompson also asserts statutory immunity under state law for Arbaugh's state tort claim. Under West Virginia Code section 29-12A-5(b),
An employee of a political subdivision[5] is immune from liability unless one of the following applies:
(1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
(2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

*771 (3) Liability is expressly imposed upon the employee by a provision of this code.
Arbaugh does not allege that Thompson acted outside the scope of his employment or that a particular statutory provision imposes liability. Therefore, Arbaugh must provide evidence that could convince a reasonable jury that Thompson's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."
According to the West Virginia Supreme Court,
The usual meaning assigned to ... "wanton" or "reckless" ... is that the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences, amounting almost to willingness that they shall follow; and it has been said that this is indispensable.
Holsten v. Massey, 200 W.Va. 775, 490 S.E.2d 864, 877 (1997) (quotation and internal quotations omitted) (emphasis added) (construing W. Va.Code § 29-12A-5(b)(2)). The "unreasonable" action and "conscious indifference" that are indicative of wanton or reckless conduct are also necessary prerequisites to finding supervisory liability under § 1983. See, e.g., Baynard, 268 F.3d at 236. Indeed, it is difficult, if not impossible, to make an objective, principled distinction between the two standards. Therefore, since a reasonable jury could find that Thompson acted with "deliberate indifference" for purposes of § 1983 liability, it could likewise find that his "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

2. Punitive Damages
Thompson urges the Court to grant summary judgment as to Arbaugh's punitive damages arising from the state negligence claim. Under West Virginia Code section 29-12A-7,
Notwithstanding any other provisions of this code or rules of a court to the contrary, in an action against a political subdivision or its employee to recover damages for injury, death, or loss to persons or property for injury, death, or loss to persons or property caused by an act or omission of such political subdivision or employee:
(a) In any civil action involving a political subdivision or any of its employees as a party defendant, an award of punitive or exemplary damages against such political subdivision is prohibited.
At all relevant times, Thompson acted within the scope of his employment as an employee of the Pendleton County Board of Education, a state political subdivision. Thus, pursuant to the unequivocal command of section 29-12A-7, Arbaugh is not entitled to punitive damages for his state law tort claim against Thompson.

D. West Virginia Human Rights Claim
In his complaint, Arbaugh avers that Thompson is liable under the West Virginia Human Rights Act ("WVHRA") for the sexual molestation and discrimination committed by Heavner. Thompson moves for summary judgment with respect to this claim, arguing that the record fails to establish that he possessed an intent to discriminate. In response, Arbaugh asserts that he was discriminated against because of his handicap, i.e., his special education status.
Under West Virginia Code section 5-11-9(6)(A), it is an unlawful discriminatory *772 practice for any agent or employee of any place of public accommodations to:
Refuse, withhold from or deny to any individual because of his or her race, religion, color, national origin, ancestry, sex, age, blindness or disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of the place of public accommodations;
Circleville School is a place of public accommodation. See id. § 5-11-3(j).
The WVHRA "prohibits discrimination ... on the basis of race, religion, color, national origin, ancestry, sex, age, blindness, or handicap." Vest v. Bd. of Edu., 193 W.Va. 222, 455 S.E.2d 781, 784 (1995) (emphasis added). Therefore, a cause of action under the WVHRA must be predicated upon an unlawful motivation, not simply an unlawful injury. Here, no evidence shows that Arbaugh was sexually abused because of any actual or perceived disability or because of his sex. Moreover, to the extent that he alleges a disability discrimination claim, he offers no evidence establishing that he, in fact, had any "mental or physical impairment which substantially limits one or more of [his] major life activities[,] ... such as caring for [himself], performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." W. Va.Code § 5-11-3(m)(1) (2004). Thus, Arbaugh's WVHRA claim must fail as a matter of law.

IV. CONCLUSION
For the preceding reasons,
 The Court GRANTS Arbaugh's motion for leave to amend his complaint (dkt. no. 284).
 The Court DENIES Thompson's motion for summary judgment with respect to Arbaugh's § 1983 claim and state tort claim (dkt. no. 273).
 The Court GRANTS Thompson's motion for summary judgment with respect to the Arbaugh's West Virginia Human Rights Claim and his request for punitive damages for the state law claim (dkt. no. 273), and DISMISSES those claims from the case.
It is SO ORDERED.
The Clerk is directed to transmit copies of this Order to counsel of record.
NOTES
[1] Heavner states that the boys were Charles Bennett, Robert Propst and Jeremy Propst. (Heavner Dep. at 140.)
[2] In the juvenile investigation, a polygraph examination of Jeremy Propst indicated that Heavner had sexually abused him. (White Dep. at 46-47.)
[3] In pertinent part, Federal Rule of Civil Procedure 16(b) states:

the district judge ... shall ... enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings;
. . . . .
A schedule shall not be modified except upon a showing of good cause and by leave of the district judge....
[4] The Fourth Circuit's generosity in construing civil rights complaints also weighs in favor of granting leave to amend. When reviewing a Rule 12(b)(6) motion challenging the sufficiency of such complaints, a court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Edwards, 178 F.3d at 244 (quotation omitted) (emphasis in original). Therefore, the Court probably would have denied a motion to dismiss any § 1983 claim against Thompson without the proposed amendment. The nature of Thompson's opposition to Arbaugh's motion for leave is analogous  it challenges the legal sufficiency of the amendment, as opposed to its factual basis.
[5] Pursuant to West Virginia Code section 29-12A-3(c), the Pendleton County Board of Education is a political subdivision.