**Beth Ann RASNICK, et al., Plaintiffs,**

**v.**

**DICKENSON COUNTY SCHOOL BOARD, et al., Defendants.**

**No. 2:03 CV 00038.**

United States District Court,
W.D. Virginia.
Big Stone Gap Division.

Sept. 10, 2004.

See, also, 2003 WL 21432562.

Andrew E. Carpenter, Gentry Locke Rakes & Moore, Roanoke, VA, for Plaintiffs.

Walt Bressler, Bressler, Curcio & Stout, Bristol, VA, for Defendants Dickenson County School Board and Danny C. Greear.

## OPINION AND ORDER

JONES, Chief Judge.

In this suit by public school students alleging sexual abuse by a former teacher, I grant summary judgment in favor of the defendant school board, but deny summary judgment for the school superintendent.

### I

Beth Ann Rasnick, Meghan Boyd, and Kayla Robbins were seventh grade students at Clinchco Elementary School in Dickenson County, Virginia. They claim that beginning in September of 2000 a teacher, Darrell Wayne Powers, began to sexually abuse them, which conduct continued throughout the school year until April 27, 2001, when Beth Ann Rasnick's mother discovered sexually explicit e-mails sent by Powers to her daughter. Mrs. Rasnick then contacted the local superintendent of schools, Danny C. Greear, and law enforcement authorities. Powers was subsequently convicted of criminal charges of contributing to the delinquency of minors, assault and battery, and indecent exposure, and was forced to resign.

The plaintiffs claim that in the two prior school years, parents had complained of sexually inappropriate conduct by Powers with other female students at the same school, and that this conduct had been brought to superintendent Greear's attention, but that he had refused to investigate the complaints and had forbidden the school principal from taking any action regarding Powers.

The three students, suing by their respective parents, filed the present action in this court seeking compensatory damages against Powers, Greear, and the Dickenson County School Board ("School Board"). They assert causes of action under 42 U.S.C.A. § 1983 (West 2003), contending that the defendants are liable to them for violating their rights to equal protection (Count I) and due process (Count III) as guaranteed by the Constitution. The

plaintiffs also assert a claim (Count II) against the School Board alone under title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C.A. §§ 1681–1688 (West 2000 & Supp.2004). As to all of their claims, they contend that the defendants Greear and the School Board were "deliberately indifferent" to the risk of harm posed by Powers (Compl.¶¶ 26, 37, 45), causing serious psychological injury to the plaintiffs.[1]

The defendants Greear and the School Board have now filed motions for summary judgment, which have been briefed and argued and are ripe for decision.

## II

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see* Fed.R.Civ.P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is not "a dis-

favored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Id.* at 327, 106 S.Ct. 2548. It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993) (internal quotation marks omitted).

The essential facts of the case, either undisputed or, where disputed, recited in the light most favorable to the plaintiffs on the summary judgment record, are as follows.

Darrell Wayne Powers' duties as a teacher at Clinchco Elementary School included supervising the computer lab. Until the 2000–2001 school year, Gene Counts was the principal of the school. Defendant Greear became superintendent of schools in Dickenson County in 1996. During the 1998–1999 school year, principal Counts told Greear that it had been alleged by Donna Sykes, the mother of a seventh-grader at the school, that Powers had "done something to her daughter of a sexual nature," the details of which he could not recall. (Counts Dep. 11.) Counts talked to another teacher about it, and that teacher indicated that she did not think it was true. When he told Greear about the incident and the other teacher's comment, Greear told him, according to Counts, "'Stay away from that. If anything is handled in this situation, I'll do the handling. It could be potentially explosive' or something to that effect." (Counts Dep. 14.)

Donna Sykes testified that her daughter told her that Powers made her daughter

---

1. The plaintiffs also sued Judy Compton, the school principal, but I earlier granted summary judgment in favor of this defendant on the ground that there was insufficient evidence that she had exhibited deliberate indif-

ference to the plaintiffs' rights. *See Rasnick v. Dickenson County Sch. Bd.*, No. 2:03CV00038, 2003 WL 21432562, at *3 (W.D.Va. June 12, 2003).

uncomfortable by putting his hand on her back and shoulder and touching her hair and telling her how pretty she was and that she ought to be a model. Mrs. Sykes also testified that after the present lawsuit was filed, her daughter told her that when she had been in the third grade, Powers had "put his privates on her hand," but that Mrs. Sykes did not know this in 1998–1999. (Sykes Dep. 8–9.)

No investigation was made by Greear of the Sykes complaint. In the winter of the next school year, 1999–2000, Counts told Greear that another parent, Kathy Baker, complained that Powers "patted her [daughter] on the butt or made some kind of comment about her breast or something like that last fall." (Counts Dep. 17.) Counts claims that he went to see Greear and told him that he wanted to talk about "another situation involving Wayne Powers." (Counts Dep. 20.) After he explained it, Greear responded, "Listen, you back off this case. Don't you handle this case. This is my case. I'll have it investigated and I'll handle it from here." (*Id.*)

Mrs. Baker testified that she told Counts that her daughter had complained that while she had been working at a computer, Powers had leaned over her and looked down her shirt and said "nice breast." (Baker Dep. 5–6.) No investigation was made of this incident by Greear. Greear in fact denies that Counts ever told him about either of these incidents.

Beginning in the 2000–2001 school year, Judy Compton became the principal at Clinchco Elementary School. There was nothing in Powers' personnel files about any prior inappropriate behavior and he had good evaluations. In October of 2000,

Compton heard that Beth Rasnick had made an allegation involving Powers. Compton called Tempa Rasnick, Beth's mother, and Mrs. Rasnick told Compton that the behavior by Powers involved playing with Beth's hair and whispering to her and that she wanted it stopped. (Rasnick Dep. 12–13.) Compton assured Mrs. Rasnick that it would be taken care of. Compton then talked to Powers, who denied any inappropriate behavior. Compton also told Beth's other classroom teachers to notify her if they noticed any suspicious behavior by Powers.[2] Compton did not inform Greear of this complaint.

In April, Mrs. Rasnick learned of the e-mails with sexual content from Powers to her daughter and reported them directly to Greear, leading to an immediate investigation by school authorities and the criminal prosecution of Powers.[3]

The details of the alleged abuse of the plaintiffs by Powers is not presented in the summary judgment record, although the plaintiffs have submitted reports by a psychiatrist that they are all suffering from post traumatic stress disorder.

### III

The plaintiffs contend in Count II of their Complaint that the School Board is liable to them under the implied right of action established by Title IX. Title IX provides in pertinent part that "no person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.A. § 1681(a). The Supreme Court has construed this legislative mandate to

---

**2.** Compton claims that Mrs. Rasnick told her not to talk to Beth directly about the incident, but Mrs. Rasnick denies that.

**3.** The exact nature of the e-mails is not disclosed in the record, although Greear recalls that there were "two or three" that he had "some concerns about" that made reference to "the body." (Greear Dep. 12.)

be enforceable by a private action seeking monetary damages. *See Franklin v. Gwinnett County Public Sch.,* 503 U.S. 60, 76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992); *Cannon v. Univ. of Chicago,* 441 U.S. 677, 717, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). In the present case, the School Board does not contest that it is covered by Title IX.

■ The Supreme Court has also held that a public school district may be liable under Title IX for the sexual harassment of a student by a teacher, where "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 277, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).

■ The plaintiffs concede that there is no evidence that individual members of the School Board knew of any misconduct by Powers prior to Mrs. Rasnick's report of the suspect e-mails, following which Powers was removed from contact with students. The School Board contends in support of its Motion for Summary Judgment that it cannot be liable under Title IX because (1) under Virginia law, a superintendent of schools such as Greear is not empowered to take corrective action on behalf of a school board; and (2) even if Greear was so empowered, his knowledge of the prior misconduct was insufficient as a matter of law. (Mem. Supp. Def.'s Mot. Summ. J. 12–14.)

The first question for resolution under the Title IX cause of action is whether superintendent Greear was a school division official with the authority to institute corrective measures as to the alleged misconduct by Powers.

The Constitution of Virginia provides that "[t]he supervision of schools in each school division shall be vested in a school board." Va. Const. art. VIII § 7. In addition, each school division must have a superintendent of schools, appointed by the school board from a list of eligibles certified by the State Board of Education. *See* Va.Code Ann. §§ 22.1–58, –60 (Michie 2003). The division superintendent performs such duties as may be prescribed by law, by the school board, and by the State Board of Education. *See id.* § 22.1–70 (Michie 2003).

The teachers in each school division are employed and placed in appropriate schools by the school board on the recommendation of the superintendent. *See id.* § 22.1–295 (Michie 2003). School boards retain "exclusive final authority" over supervision of its employees, including dismissals, suspensions, and placement on probation. *Id.* § 22.1–313(A) (Michie 2003). However, the superintendent may recommend dismissal or probation, *see id.* § 22.1–309 (Michie 2003), and may himself suspend a teacher for up to sixty days for sexually abusing a child, or indefinitely if the teacher is criminally charged with the abuse—subject in both cases to the right to a hearing before the school board, *see* § 22.1–315(A) (Michie 2003).

At the time of the events in this case, the School Board had adopted and placed in effect a sexual harassment policy (the "Policy") that prohibited sexual harassment of students and others. The Policy also set forth the procedures to follow in the school division in the event of an incident of sexual harassment, which was defined as "unwelcome sexual advances, requests for sexual favors, sexually motivated physical conduct or other verbal or physical conduct or communication of a sexual nature." Policy § II(A). Examples of sexual harassment were held to include "unwelcome, sexually motivated or inappropriate patting, pinching or other physical contact (other than necessary

restraint of students by school personnel to avoid physical harm to people or property)[,] unwelcome sexual flirtation or propositions [and] graphic verbal comments about an individual's body, or overly personal conversation of a sexual nature." *Id.*

The Policy required an investigation of a complaint of sexual harassment, followed by a report to the superintendent. Within five days of receipt of a report of investigation, the superintendent was required to issue a decision as to whether the sexual harassment policy had been violated and "what action if any should be taken." *Id.* § III(C). If the superintendent determined that sexual harassment had occurred, "the Dickenson County School Division shall take prompt, appropriate action to address and remedy the violation as well as prevent any recurrence [which] action may include discipline up to and including expulsion or discharge." *Id.* If the superintendent determined that no harassment had occurred, the person allegedly harassed could appeal that decision to the School Board. *Id.* § III(D).

It is established that a school division receiving federal funding is not liable under the doctrine of respondeat superior or other agency principle for a violation of Title IX. *See Gebser,* 524 U.S. at 285, 118 S.Ct. 1989; *see also Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 642, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (holding that school board may be liable under Title IX for student-on-student sexual harassment of which it had actual knowledge).

The School Board relies on *Baynard v. Malone,* 268 F.3d 228 (4th Cir.2001). In that case, a former Virginia public school student sued a teacher who had sexually abused him, along with the school principal, the division superintendent, and the local school board. The plaintiff claimed that the principal and superintendent were liable for money damages under 42 U.S.C.A. § 1983, and that the school board was liable under Title IX. The facts showed that the principal, Malone, had received information prior to the abuse that the teacher in question had previously molested another male student some years earlier. Malone did nothing about this information and thereafter the plaintiff was abused by the same teacher. In addition, once the abuse started, Malone was told by the school's librarian that the teacher had been seen with the plaintiff sitting on his lap. Malone also knew that the teacher was "very physical" in school with his students and frequently took male students on camping trips without other adults being present. Again, Malone took no action, other than to admonish the teacher to behave more appropriately.

A jury found against Malone and the Fourth Circuit upheld that verdict, finding that there was sufficient evidence for a rational jury to find that Malone had been deliberately indifferent to the risk of harm from the teacher. 268 F.3d at 236. The court also upheld the trial court's grant of judgment as a matter of law to the superintendent, which judgment was based on the ground that the superintendent had no information other than that uncovered by a subsequent investigation that led to the teacher's resignation. *Id.* at 237. Finally, the court determined that the school board was not liable under Title IX because the principal, Malone, did not have the power under state law to take effective action on the school board's behalf and that "the principal of a public school in Virginia cannot be considered the functional equivalent of the school district." *Id.* at 238–39.

At least implicitly, *Baynard* holds that only actual school board members in Virginia can be considered the appropriate offi-

cials pursuant to *Gebser's* interpretation of Title IX. *See* 268 F.3d at 244 (Michael, J., dissenting). While local superintendents in Virginia have somewhat greater authority than school principals, including the authority to temporarily suspend teachers, in the present case only the School Board could taken the sole corrective measure that would have ultimately protected the plaintiffs from harm—removing Powers as a teacher at the school.

■ Nevertheless, even if Greear was determined to be an appropriate official under Title IX, I find that his alleged knowledge does not meet the required standard of proof established for Title IX.

The Fourth Circuit's opinion in *Baynard* is again determinative. While it appears to be the minority view, *see Doe v. Green*, 298 F.Supp.2d 1025, 1034 n. 2 (D.Nev.2004) (reviewing cases), the court in *Baynard* held that the "actual notice" required under Title IX means actual notice that the teacher is currently abusing one of his students, and not merely knowledge that the teacher has the potential to abuse a student. *See* 268 F.3d at 238–39. The Fourth Circuit found that what principal Malone knew—that the teacher in question had abused a student in the past and that the teacher had been in ambiguous physical contact with the plaintiff and other male students—was not actual notice sufficient to impose liability under Title IX.

Similarly, in the present case, Greear's knowledge that Powers had engaged in two instances of inappropriate behavior in preceding school years was not actual knowledge that he was sexually harassing his present students.

Were I to decide this issue anew, I would adopt the view embraced by the majority of courts that the proper interpretation of the relevant Supreme Court authority is that actual notice includes knowledge indicating a substantial risk or likelihood of harm. But I am bound to follow *Baynard*, and I cannot distinguish it in any principled way from the present case.

For the reasons stated, the School Board's Motion for Summary Judgment as to Count II will be granted.

## IV

■ The School Board is also sued in its official capacity under § 1983. As with Title IX, the School Board cannot be liable under § 1983 under respondeat superior or other agency principles. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It can be sued only under the so-called "municipal liability" theory by which the unconstitutional action complained of implements an official policy. *See id.* at 694, 98 S.Ct. 2018. Policy need not be discovered in the formal acts of the governmental body—a single decision adopted by an official with authority to make final policy can subject the governmental agency to liability. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Whether the official has such authority is determined by reference to state law. *See id.* at 483, 106 S.Ct. 1292.

As more fully described in part III of this opinion, a Virginia division superintendent does not have final policymaking authority over personnel decisions. Rather, such authority is placed exclusively in the hands of the local school board. *See Riddick v. Sch. Bd. of the City of Portsmouth*, 238 F.3d 518, 523–24 (4th Cir.2000) (holding that Virginia division superintendent did not have final policymaking authority to discipline or remove coach who improperly videotaped female students).

Accordingly, the School Board's Motion for Summary Judgment will be granted to the remaining counts of the Complaint.

## V

Defendant Greear seeks summary judgment in his favor on the ground that there is insufficient proof of his liability under § 1983. As explained in *Baynard*, in order to establish liability under § 1983 in a case like this, a plaintiff must show that (1) the defendant in a supervisory position had knowledge (actual or constructive) that her subordinate was engaged in conduct that "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the response by the defendant was so inadequate as to show deliberate indifference; and (3) there was a causal link between the inaction and the injury suffered by the plaintiff. *See Baynard*, 268 F.3d at 235.

Based on the summary judgment record, I find that there is sufficient evidence, if believed, for a rational jury to determine that Greear knew of Powers' prior harassment of students, that he did nothing to investigate such harassment and to initiate removal of Powers from contact with young girls in school, and that his failures led to Powers' later harassment of the plaintiffs.

Again, I find the Fourth Circuit's opinion in *Baynard* instructive. As in that case, "a factfinder could reasonably infer that [the defendant's] failure to respond to mounting evidence of potential misconduct by [the teacher] exhibited deliberate indifference." *Id.* at 236. In the present case, there is evidence that in the two preceding school years Greear intentionally ignored evidence that Powers had committed acts of sexual harassment (as defined in the school division's Policy) against students in the same situation as the plaintiffs. While it appears that the incidents of misconduct by Powers in those earlier cases was not as serious or as prolonged as those complained of by the plaintiffs, a jury could reasonably find that a proper response

then would likely have prevented the later abuse of the plaintiffs. *See Hart v. Paint Valley Local Sch. Dist.*, No. C2–01–004, 2002 WL 31951264, at *7 (S.D.Ohio Nov.15, 2002) (holding that failure to take remedial action against teacher by school division after student-fondling incidents in 1976 and 1990, constituted deliberate indifference to risk of abuse occurring in 1999). The earlier incidents, if true, were clearly an indication that Powers was acting in sexually inappropriate ways toward the young female students in his charge. Even if they were not as egregious as his later conduct toward the plaintiffs, a jury could reasonably find that the failure to stop such activity emboldened Powers to even more perverse and injurious harm.

Greear relies on the opinion of the Sixth Circuit in *Doe v. Claiborne County, Tenn.*, 103 F.3d 495 (6th Cir.1996), in which a school principal and superintendent were found not to have been deliberately indifferent to a teacher's sexual abuse of students. However, in that case the facts showed that while the teacher had been earlier accused of sexual misconduct with other students, the defendants reported the allegations to the Department of Human Services, removed the teacher from student contact, and thereafter closely supervised him until he had entered into an agreement with the Department of Human Services that appeared to exonerate him of the past charges. *See* 103 F.3d at 513. The Sixth Circuit was thus able to hold as a matter of law that the information available to the defendants did not show a strong likelihood that the teacher would offend again. *See id.* In the present case, however, that issue should be reserved for a jury. It may well be that the jury will believe Greear when he says that he had absolutely no knowledge of Powers' prior misconduct, but I cannot make that decision at this stage of the case.

Greear also argues that he should be entitled to qualified immunity in this case. A public official is entitled to immunity from a damage suit under § 1983 "insofar as [the official's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Public officials lose this immunity "if they violate a constitutional or statutory right of the plaintiff and the right was clearly established at the time of the alleged violation such that an objectively reasonable official in the defendants' position would have known of it." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir.1998). To determine the defense of qualified immunity, the court must engage in a two-step inquiry. The court

> must [first] decide "whether a constitutional right would have been violated on the facts alleged.... Next, assuming that the violation of the right is established[,] ... [it] must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right."

*Bailey v. Kennedy,* 349 F.3d 731, 739 (4th Cir.2003) (citations omitted).

As stated previously, I find that the plaintiffs have presented sufficient facts, which if believed would show a violation of their constitutional right to be free from sexual abuse. Moreover, it is equally plain that such a right was clearly established at all times relevant in this case. *See Arbaugh v. Bd. of Educ.,* 329 F.Supp.2d 762, 769 (N.D.W.Va.2004) (holding that the right was clearly established as far back as 1980). Thus, qualified immunity on the present record is not appropriate.

For these reasons, Greear's Motion for Summary Judgment will be denied.

## VI

For the reasons set forth in this opinion, it is **ADJUDGED AND ORDERED** as follows:

1. The Motion for Summary Judgment by the Dickenson County School Board is GRANTED and judgment on the merits is entered in favor of said defendant; and

2. The Motion for Summary Judgment by Danny C. Greear is DENIED.