Filed: August 8, 2005

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 04-2151(L)
(CA-03-90-2-18)

ADDIE MIKKELSEN, on behalf of herself and all
female employees, current, former and future,
of H. Wayne DeWitt, Sheriff, County of
Berkeley,

Plaintiff - Appellant,

versus

H. WAYNE DEWITT, in his personal capacity,

Defendant - Appellee,

and

BERKELEY COUNTY; HENRY BROUGHTON,

Defendants.

O R D E R

The court amends its opinion filed July 15, 2005, as follows:

On page 2, line 2 of attorney information, following the name
of Caroline Wrenn Cleveland, "LAW OFFICE OF DUFFIE STONE, L.L.C.,"
is deleted, and "Bluffton" is changed to "Charleston."

For the Court - By Direction

                            /s/ Patricia S. Connor

                            Clerk

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 04-2151**

———————————

ADDIE MIKKELSEN, on behalf of herself and all
female employees, current, former and future,
of H. Wayne DeWitt, Sheriff, County of
Berkeley,

Plaintiff - Appellant,

versus

H. WAYNE DEWITT, in his personal capacity,

Defendant - Appellee,

and

BERKELEY COUNTY; HENRY BROUGHTON,

Defendants.

———————————

**No. 04-2165**

———————————

ADDIE MIKKELSEN, on behalf of herself and all
female employees, current, former and future,
of H. Wayne DeWitt, Sheriff, County of
Berkeley,

Plaintiff - Appellee,

versus

H. WAYNE DEWITT, in his personal capacity,

Defendant - Appellant,

and

BERKELEY COUNTY; HENRY BROUGHTON,

                                                    Defendants.

─────────────

Appeals from the United States District Court for the District of South Carolina, at Charleston.  David C. Norton, District Judge. (CA-03-90-2-18)

─────────────

Argued:  May 24, 2005                    Decided:  July 15, 2005

─────────────

Before WILKINSON, MICHAEL, and TRAXLER, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

Ray P. McClain, Charleston, South Carolina, for Appellant/Cross-appellee.  Caroline Wrenn Cleveland, Charleston, South Carolina, for Appellee/Cross-appellant.

─────────────

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Addie Mikkelsen, a court security officer, brings this suit against her former boss, Sheriff Wayne DeWitt, under 42 U.S.C. § 1983 (2000). Her claims -- arising under the Equal Protection Clause and the First Amendment -- involve the sheriff's allegedly inadequate and impermissible response to her complaint that she was sexually harassed by a fellow officer. That officer was asked to resign and subsequently resolved his civil dispute with Mikkelsen in a settlement. Mikkelsen's only remaining claims are against Sheriff DeWitt in his individual capacity as her supervisor.

We hold that these claims were properly dismissed. The evidence does not establish, as it must, that the sheriff demonstrated "deliberate indifference" to a risk that women like Mikkelsen were being sexually harassed. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Nor does it show that the sheriff retaliated against Mikkelsen because she complained. We therefore affirm the district court's grant of summary judgment to the defendant.

I.

H. Wayne DeWitt is the sheriff of Berkeley County, South Carolina. Addie Mikkelsen worked for the Berkeley County Sheriff's Office as a court security officer from 1997 to 2000, and again from 2001 to 2002.

3

According to Mikkelsen, beginning in December 2001 she began to receive unwanted attention from her immediate supervisor, Lieutenant Henry Broughton. Mikkelsen says Broughton made several sexual advances towards her -- including attempting to kiss her and transmitting several inappropriate pager messages.

In January 2002, Mikkelsen reported her allegations up the chain of command at the sheriff's office, and they came to DeWitt's attention on January 17. The following day, Sheriff DeWitt placed Broughton on paid administrative leave. Mikkelsen then retained an attorney who wrote a letter on her behalf summarizing Broughton's actions.

Shortly thereafter DeWitt contacted Marie Wauben, the County's Director of Human Resources, and asked her to conduct an investigation into the matter. Wauben testified that she was asked by DeWitt to be an "independent fact-finder" and "third-party investigator" into Mikkelsen's allegations. Outside of this investigation, Wauben had no relationship with DeWitt or the deputies of the Berkeley County Sheriff's Office.

Wauben took eight weeks to complete her investigation. She ultimately concluded that some of Mikkelsen's allegations were credible (specifically the ones involving the inappropriate pager messages). However, she further determined that Mikkelsen herself had also engaged in inappropriate conduct. She informed DeWitt of reports that Mikkelsen had, among other things, left flirtatious

4

messages on napkins for Broughton and had been seen massaging his neck.

Based on this information, Sheriff DeWitt sent two letters. He sent a letter to Broughton asking him to resign or face termination. Broughton chose to retire on March 15, 2002. Four days later, DeWitt sent a letter to Mikkelsen accusing her of conduct unbecoming of an officer. He presented her with the same choice he gave Broughton. Mikkelsen's job was terminated on March 25, 2002.

Mikkelsen says the allegations in her termination letter are mere "gossip." She argues that DeWitt erroneously credited them and impermissibly shifted the focus of the investigation away from Broughton's conduct and to her own. According to Mikkelsen, DeWitt has had a history of hostility towards sexual harassment claims since one was once publicly made against him.

Mikkelsen filed suit in federal court for the district of South Carolina naming Berkeley County, Sheriff DeWitt (in his personal capacity), and Lt. Broughton as defendants. She settled her claims against Broughton, and the claims against the County were dismissed on summary judgment and have not been appealed.

The only counts before us, therefore, are the two constitutional claims against Sheriff DeWitt. Mikkelsen argues that the sheriff violated her Equal Protection rights by perpetuating a policy of discouraging sexual harassment complaints.

She further claims that DeWitt violated her First Amendment rights by demoting her to clerical duties and then firing her in retaliation for reporting Broughton. The district court found for DeWitt on summary judgment, and we review that finding de novo. TFWS, Inc. v. Schaefer, 325 F.3d 234, 236 (4th Cir. 2003).

II.

We first address Mikkelsen's Equal Protection claim. Mikkelsen accuses DeWitt of creating a work environment where sexual harassment complaints are discouraged, such that potential harassers may proceed uninhibited by a threat of consequences.

"[I]ntentional sexual harassment of employees by persons acting under color of state law violates the Fourteenth Amendment and is actionable under § 1983." Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994). Assuming a constitutional violation occurred here, however, does not by itself resolve the question at hand. To take advantage of the remedy afforded by § 1983, Mikkelsen must prove that DeWitt is liable for the violation under some recognized theory of fault. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Her theory is that DeWitt is liable for Broughton's actions because he created a "policy" effectively permitting male officers to freely harass their female co-workers.

First, a point of clarification. Mikkelsen's contention that Sheriff DeWitt is a "policy maker" does not quite capture the

6

relevant issue here. Debating whether a public employer has adopted an unconstitutional "custom" or "policy" is a question to be asked when examining the basis for <u>municipal</u> liability under § 1983. <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978). It is not the right question to ask when confronting a supervisor's potential liability in his individual capacity. <u>See</u> <u>Randall v. Prince George's County</u>, 302 F.3d 188, 206, 210 (4th Cir. 2002) (inquiring into the existence of a policy to assess municipal liability, but employing separate analysis to determine individual supervisor's liability).

In this case, Mikkelsen's claims against Berkeley County are not before us; the only remaining defendant is Sheriff DeWitt in his personal capacity. Therefore, as our precedent makes clear, to hold DeWitt responsible for Broughton's behavior, DeWitt's conduct must meet the test for "supervisory liability." And our analysis on that question is guided by the test enunciated in <u>Shaw v. Stroud</u>, 13 F.3d 791 (4th Cir. 1994). <u>See also</u> <u>Randall</u>, 302 F.3d at 206 (using <u>Shaw</u> test to assess supervisory liability of an individual); <u>Tigrett v. Rector & Visitors of the Univ. of Va.</u>, 290 F.3d 620, 630-31 (4th Cir. 2002) (same); <u>Baynard v. Malone</u>, 268 F.3d 228, 235 (4th Cir. 2001) (same).[*]

---

[*]The district court approached this question in a different manner. It held that DeWitt's potential liability should be analyzed using the Supreme Court's Title VII standards -- as modified by <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998) and <u>Burlington Indus. v. Ellerth</u>, 524 U.S. 742 (1998). It is important

7

<u>Shaw</u> teaches that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates."  13 F.3d at 798.  Such liability "is not premised upon respondeat superior but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  <u>Id.</u> (quoting <u>Slakan v. Porter</u>, 737 F.2d 368, 372-73 (4th Cir. 1984)).

Three elements are required to establish supervisor liability under § 1983.  A plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;

> (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and

> (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

<u>Shaw</u>, 13 F.3d at 799 (internal quotations omitted).

---

to remember, as the district court briefly noted, that <u>Faragher</u> and <u>Burlington</u> govern liability standards for employers, not for supervisors in their individual capacities.

In any event, even after <u>Faragher</u> and <u>Burlington</u>, our court has held that "[e]mployees are not liable in their individual capacities for Title VII violations." <u>Lissau v. S. Food Serv., Inc.</u>, 159 F.3d 177, 178 (4th Cir. 1998).  Thus, even under this alternative analysis, Mikkelsen's claim would fail.

While it is questionable whether Mikkelsen satisfies any of these three elements, our focus here will be on the second one. We must determine whether DeWitt demonstrated "deliberate indifference" to the presence of sexual harassment in his office. Id. Mikkelsen must prove that DeWitt showed "continued inaction in the face of documented widespread abuses." Slakan, 737 F.2d at 373. "Deliberate indifference is a very high standard -- a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). As such, "a supervisory official who responds reasonably to a known risk is not deliberately indifferent even if the harm is not averted." Baynard v. Malone, 268 F.3d 228, 236 (4th Cir. 2001).

To assess whether Sheriff Dewitt responded reasonably to the risk that his female employees were being subject to sexual harassment, we are helped by considering his response to the allegations in this very case. One day after learning of Mikkelsen's complaint, DeWitt put the alleged offender on administrative leave. Shortly thereafter, he contacted an independent fact-finder to conduct an investigation into the matter. This investigator, in fact, testified that rarely had she seen an employer respond so promptly. Following her investigation, DeWitt immediately asked Broughton to resign.

Sheriff DeWitt's reaction was thus rapid, reasonable, and appropriate. If, as Mikkelsen contends, DeWitt was predisposed to

9

ignore sexual harassment complaints, then his conduct toward her specific complaint is inexplicable. Regardless of the ultimate fallout from the investigation, it is hard to accept Mikkelsen's contention that Dewitt does not permit sexual harassment complaints to be investigated when his actions here do not fit that pattern at all. We thus cannot find that DeWitt demonstrated "deliberate indifference" to sexual harassment complaints, and we therefore cannot hold him liable for Broughton's misconduct.

## III.

Mikkelsen next claims that DeWitt violated her First Amendment rights by firing her in retaliation for protected speech.

It is true that public employees may not be fired in retaliation for speaking on matters of public concern. Pickering v. Bd. of Educ., 391 U.S. 563 (1968); see also Connick v. Myers, 461 U.S. 138 (1983). The parties ask us to weigh in on a debate among the circuits regarding whether complaints of sexual harassment count as such public matters. Compare Azzaro v. County of Allegheny, 110 F.3d 968, 978-79 (3d Cir. 1997) (finding them to be public matters) with Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143 (2d Cir. 1993) (finding them not to be public matters where the complaints were personal in nature and did not "implicate[] system-wide discrimination"). The answer to this question may very well change depending on the specific

10

circumstances involved.  But in any event, we need not grapple with the issue today because there is no evidence that DeWitt retaliated against Mikkelsen for any speech.

An essential component of any public employee's First Amendment retaliation claim is proving a "causal relationship between the protected speech and the retaliatory employment action."  Love-Lane v. Martin, 355 F.3d 766, 776 (4th Cir. 2004). Plaintiff must establish "that the protected speech was a substantial factor in the decision to take the allegedly retaliatory action."  Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 352 (4th Cir. 2000) (internal quotations omitted).

Although we must defer to Mikkelsen's version of the events leading to her claim, id. at 356, it is still not apparent that DeWitt fired her because she reported Broughton.  Several undisputed facts belie any such argument.  Mikkelsen's speech -- her complaint about Broughton -- prompted DeWitt to immediately initiate an investigation.  It was not until eight weeks later, after much evidence was gathered through the independent investigator's review, that DeWitt decided to terminate the employment of both Mikkelsen and Broughton.  It is difficult for plaintiff to contend that DeWitt would waste the time and resources required for such an investigation if his goal was simply to retaliate against Mikkelsen for making the complaint in the first place.  On the contrary, his actions indicate a supervisor who was quite responsive to the initial allegation.

Moreover, there is a far more compelling explanation for Mikkelsen's termination -- namely, the reports of Mikkelsen's misconduct that came to light from Wauben's investigation. Even if, as Mikkelsen urges, the reports of her flirtatious conduct were unfounded, that does not alter the fact that DeWitt could reasonably have believed in their veracity. DeWitt made a decision to fire Mikkelsen only after learning of the investigation's results. No evidence exists to indicate that DeWitt fired Mikkelsen for her initial complaint rather than for the subsequent reports of her inappropriate behavior.

IV.

Allegations of sexual harassment are a serious matter, and many of Broughton's actions towards Mikkelsen give cause for real concern. However, Sheriff DeWitt did not sit idly by. After placing Broughton on leave immediately and contacting an independent fact-finder to conduct an investigation, we are hard pressed to fault the sheriff for being "deliberately indifferent" to sexual harassment complaints. Since DeWitt responded reasonably to Mikkelsen's allegations and because we find no evidence to suggest he fired her for making them, he is not liable to Mikkelsen under § 1983.

The judgment is

AFFIRMED.

12